**KENTUCKY NATURAL GAS CORPORATION v. FEDERAL POWER COMMISSION et al.**

No. 10132.

Circuit Court of Appeals, Sixth Circuit.

Jan. 20, 1947.

216

A. Shelby Winstead, of Louisville, Ky. (Ernest Woodward, A. Shelby Winstead, and Woodward, Dawson, Hobson & Fulton, all of Louisville, Ky., and Carroll E. Byron, of Owensboro, Ky., on the brief), for appellant-petitioner.

A. D. Stevens, of Springfield, Ill. (Stevens & Herndon and A. D. Stevens, all of Springfield, Ill., R. D. Stevenson, of Chicago, Ill., and Hugh McD. Ritchey, of Cincinnati, Ohio, on the brief), for Central Illinois Public Service Co., respondent.

Chas. E. McGee, of Washington, D. C. (Bradford Ross, Charles E. McGee, Melvin Richter, William L. Brunner, and Joseph F. Weiler, all of Washington, D. C., for Federal Power Commission.

Before HICKS, ALLEN, and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioner, Kentucky Natural Gas Corporation, hereinafter referred to as Kentucky Natural, proceeding under the provisions of § 717r, Title 15 U.S.C.A., seeks a review of an order of the Federal Power Commission entered September 7, 1945. The order complained of granted a certificate of public convenience and necessity to Central Illinois Public Service Company, hereinafter referred to as Central Illinois, to construct and operate transmission pipeline facilities of approximately 20 miles connecting its local distribution system in Central Illinois with the East-West pipeline facilities of Panhandle Eastern Pipe Line Company, hereinafter referred to as Panhaudle, at Tuscola, Illinois, for the purpose of providing the natural gas required by Central Illinois for service to its consumers in the area surrounding Mattoon, Illinois. The order denied the application of Kentucky Natural for a certificate of public convenience and necessity to construct and operate such facilities. Kentucky Natural and Central Illinois are in agreement that public convenience and necessity justify the construction and operation of the proposed new facilities, but Kentucky Natural contends that the certificate should have been issued to it instead of to Central Illinois.

The Commission made the following findings of fact which are supported by substantial evidence and are conclusive. § 717r(b), Title 15 U.S.C.A. Central Illinois owns and operates a natural gas transmission pipeline system in the State of Illinois extending from a point on the Illinois-Indiana state line in a generally westerly direction to Effingham, Illinois, connecting its various distribution systems in Paris, Kansas, Ashmore, Charleston, Mattoon, Neoga, Sigel and Effingham. It purchases its natural gas supply for its Mattoon area from Kentucky Natural, which gas is produced primarily in Texas and Kansas, and and is transported eastwardly from the producing states by Panhandle across intervening states (including Illinois) to Montezuma, Indiana, where it is delivered by

Panhandle to Kentucky Natural. Kentucky Natural in turn transports such natural gas westwardly to a point on the Indiana-Illinois state line which is the Eastern terminus of Central Illinois' transmission pipeline. From that point, Central Illinois in turn, transports such gas westwardly to its various distribution systems in the Mattoon area. The present pipeline system of Central Illinois is inadequate to supply the estimated future demands in the communities which it now serves in the Mattoon area due to lack of capacity of such system west of Paris, Illinois. In order to increase its present system capacity to the extent required to adequately supply its present market with natural gas purchased at the Illinois-Indiana state line, it will be necessary for Central Illinois to expend at least $350,000 for additional pipeline facilities, whereas its estimated cost of the proposed new interconnection, referred to above, will be approximately $182,900. The proposed 6-inch natural gas transmission pipeline will have a capacity in excess of 5,000 Mcf of gas per day which will be adequate to meet the now anticipated natural gas requirements of Central Illinois in the Mattoon area through 1950. Based upon present operations, Central Illinois will be unable to meet its peak day demand for the winter of 1945-1946 to the extent of 1043 Mcf. By the winter of 1949-1950 this deficit, as estimated, will increase to 2290 Mcf. The reserves of Panhandle are the common source of natural gas which will be obtained regardless of which company constructs and operates the facilities. Panhandle will have available adequate reserves to meet the requirements resulting from the proposed operation of the facilities referred to. Central Illinois and Kentucky Natural are each financially able to construct and operate the new facilities.

The Commission found as its conclusions in the matter that (1) public convenience and necessity do not require the issuance of a certificate of public convenience and necessity to Kentucky Natural; (2) it is in the public interest that Central Illinois be authorized to construct and operate the proposed transmission pipeline between Tuscola and Mattoon, Illinois, as an integral part of its transmission pipeline system, and obtain its natural gas supply directly from Panhandle; (3) the delivery of the natural gas requirements of Central Illinois will not place any undue burden upon Panhandle, and will not impair its ability to render adequate service to its customers; (4) the construction and operation by Central Illinois of the facilities referred to are and will be required by the present and future public convenience and necessity, and a certificate authorizing such proposed construction and operation should be issued; and (5) Central Illinois is able and willing properly to do the acts and perform the service proposed, and to conform to the provisions of the Natural Gas Act as amended and the requirements, rules and regulations of the Commission thereunder. The order complained of followed.

The question is controlled by the provisions of § 717f, Title 15 U.S.C.A., which provides, with certain exceptions not material here, that no natural gas company shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction of any facilities therefor, or operate any such facilities, unless there is in force with respect to such natural gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations. The section provides for a hearing upon an application for such a certificate and for the giving of reasonable notice of the hearing to all interested persons, and that "a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operation, sale, service, construction, extension, or acquisition covered by the application, if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules and regulations of the Commission thereunder, and that the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied." It is well settled that it is for the Commission to

draw the conclusion that the present or future public convenience and necessity either requires or does not require the granting of a certificate. Normally an order granting a certificate may be set aside only when the evidence admits of but one conclusion, that its granting will not serve public convenience and necessity, or that the applicant is not in a position to supply the need. Department of Conservation v. Federal Power Commission, 5 Cir., 148 F.2d 746, 750. In the present case the findings of fact fully justify and support the Commission's ruling that the applicant Central Illinois qualified under the provisions of the Act referred to and that the proposed service and construction is or will be required by the present or future public convenience and necessity. Accordingly, we are not authorized to set aside the ruling complained of. It may be true, as contended by petitioner, that it is also a qualified applicant, but such a fact, in and of itself, is not sufficient to set aside the granting of the certificate to a competing applicant. Where two competing applicants are both qualified to perform the proposed service, the Commission is necessarily called upon to rule in favor of one and against the other. Such a ruling can not be set aside on this review unless shown to be arbitrary. Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 586, 62 S.Ct. 736, 86 L.Ed. 1037; Colorado Interstate Gas Co. v. Federal Power Commission, 10 Cir., 142 F.2d 943, 955, affirmed 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206. The burden of making such a showing falls upon the petitioner. It has not been met in this case. Its chief contention in attempting to meet this burden is that it has been satisfactorily supplying this territory since 1932 by obtaining natural gas from Panhandle and delivering it to Central Illinois through its own facilities at a point on the Indiana-Illinois state line, and that while Central Illinois has been earning a fair return on its rate base, Kentucky Natural has been operating at a loss for many years and its ability to render adequate service at reasonable rates in its remaining area would be jeopardized by the loss of its sales to Central Illinois. But a right to continue to exclusively serve the Mattoon area is not granted to it by the Natural Gas Act. On the contrary, § 717f(g), Title 15 U.S.C.A. appears to specifically recognize the right of the Federal Power Commission to issue a certificate of public convenience and necessity to a competitor, by providing "Nothing contained in this section shall be construed as a limitation upon the power of the Commission to grant certificates of public convenience and necessity for service of an area already being served by another natural gas company." See Arkansas Louisiana Gas Co. v. Federal Power Commission, 5 Cir., 113 F.2d 281. The Commission also found as a fact that the record does not show that the ability of Kentucky Natural to render natural gas service will be jeopardized by the loss of the business of Central Illinois, thus factually rejecting petitioner's contention in that respect. This negative finding is supported by the evidence. Kentucky Natural now requests that this Court order that additional evidence be taken before the Commission on this issue, as authorized by § 717r(b) of Title 15 U.S.C.A. The granting of such a request is conditional upon a showing that there were reasonable grounds for failure to adduce such evidence at the proceedings before the Commission. The record discloses that petitioner had ample opportunity to develop this point before the Commission, but purposely refrained from doing so. The application must accordingly be denied.

Kentucky Natural presented to the commission several factors favorable to its application. But the failure of the Commission to consider them decisive in the matter is not grounds for setting aside the Commission's order. The Commission was empowered to consider other factors favorable to Central Illinois of more controlling importance. We believe that the fact that the construction of the proposed new facilities at an estimated cost of $182,900 would eliminate the necessity of the expenditure of at least $350,000 by Central Illinois for otherwise necessary improvements and additions to its present facilities, and the fact that the proposed new facilities will enable it to obtain its gas requirements for the Mattoon area direct from

Panhandle instead of indirectly from Panhandle through Kentucky Natural are by themselves of sufficient controlling importance to justify the ruling of the Commission in granting the certificate of public convenience and necessity to Central Illinois instead of to Kentucky Natural, both being otherwise qualified applicants. The elimination of an unnecessary middleman between the wholesaler and the retailer is a material benefit to the ultimate consumer at retail. The basic purpose of the Natural Gas Act is protection of the public interest. § 717(a), Title 15 U.S.C.A. While the Commission has no jurisdiction to fix or regulate rates in local or intrastate sales, yet it is obvious that the cost to the ultimate consumer at retail is materially affected by the sales price of the gas from the wholesaler to the retailer, and that a factor materially affecting this cost is entitled to considerable weight by the Commission in choosing between two competing applicants. Giving such consideration to this ultimate effect on consumers is not an attempt to regulate intrastate rates, but is an effort to perform its statutory duty in protecting the public interest. Regulation of rates by state or local agencies follows thereafter. Compare Central States Electric Co. v. Muscatine, 324 U.S. 138, 144, 65 S.Ct. 565, 89 L.Ed. 801.

In this case the Commission made a finding as follows: "Central Illinois proposes to reduce its rates to ultimate consumers if it is able to obtain its natural gas supply directly from Panhandle Eastern. On the other hand, Kentucky Natural proposes to keep in force and effect its present rates to Central Illinois which will be in excess of the rates to be charged by Panhandle Eastern." Kentucky Natural challenges the authority of the Commission to make such a finding and to base a ruling upon such a ground. It points out that while the Act as originally enacted in 1938 authorized by specific language in § 717f(c), Title 15 U.S.C.A., such a finding and ruling, yet the 1942 amendment eliminated this specific authorization in its rewording and reenactment of the section. We do not believe the decision in the present case requires a ruling on that question. While such a finding gives added support to the ruling of the Commission, we believe that the finding can be disregarded in this case and the ruling of the Commission fully sustained on the remaining established facts for the reasons hereinabove indicated.

The Commission's order, now under review, is accordingly affirmed.