PANHANDLE EASTERN PIPE LINE CO.
v. FEDERAL POWER COMMISSION.

No. 9588.

United States Court of Appeals
District of Columbia.

Argued May 5, 1948.

Decided June 3, 1948.

Writ of Certiorari Denied Oct. 25, 1948.

See 69 S.Ct. 81.

Mr. Robert P. Patterson, of New York City, with whom Messrs. John S. L. Yost, of New York City, and John W. Scott and Harry S. Littman, both of Washington, D. C., were on the brief, for petitioner.

Mr. Bradford Ross, Gen. Counsel, Federal Power Commission, of Washington, D. C., with whom Messrs. Louis W. McKernan and W. Russell Gorman, both of Washington, D. C., Principal Attys., Federal Power Commission, were on the brief, for respondent.

Mr. Thomas J. McGrath, of Washington, D. C., with whom Mr. Amos M. Mathews, of Chicago, Ill., was on the brief, for intervenors The Alton R. Co., Lake Michigan Docks Ass'n, and others, and National Coal Ass'n and others.

Mr. Archie C. Fraser, Asst. Atty. Gen., of Michigan and of the Bar of the State of Michigan, pro hac vice, by special leave of court, for intervenor Michigan Public Service Commission.

Mr. Frederick G. Hamley, of Washington, D. C., also entered an appearance for intervenor Michigan Public Service Commission.

Mr. Donald R. Richberg and Mr. Charles V. Shannon, both of Washington, D. C., with whom Messrs. Carl I. Wheat, Stanley M. Morley and Omar L. Crook, all of Washington, D. C., were on the brief, for intervenor Michigan-Wisconsin Pipe Line Co.

Mr. Raymond J. Kelly, Corp. Counsel, of Detroit, Mich., for intervenor City of Detroit.

Mr. James H. Lee, Asst. Corp. Counsel, of Detroit, Mich., also entered an appearance for intervenor City of Detroit.

Before EDGERTON and PROCTOR, Associate Justices and MORRIS, District Judge sitting by designation.

EDGERTON, Associate Justice.

This is a petition by Panhandle Eastern Pipe Line Company ("Panhandle") under § 19(b) of the Natural Gas Act[1] to review orders of the Federal Power Commission authorizing Michigan-Wisconsin Pipe Line Company ("Michigan-Wisconsin") to construct and operate a natural gas pipe line from a point in the Hugoton field in Hansford County, Texas, to the Austin storage field in Michigan, and also a branch line from a point in Illinois into Wisconsin, for the purpose of supplying natural gas to various communities in Wisconsin, Iowa, Missouri, and Michigan. Two Commissioners dissented.

The largest market to be served is the Detroit-Ann Arbor area in Michigan. Natural gas is now brought into that area only by Panhandle. The local distributor there, Michigan Consolidated Gas Company, and Michigan-Wisconsin are under common control.

The Commission made the following findings among many others. "Applicant [Michigan-Wisconsin] proposes to serve natural gas in areas within the State of Wisconsin where a substantial demand for such service exists, no other application for authority to render such service being now before this Commission. Applicant also proposes to add greatly to the supplies of natural gas available for service within the State of Michigan where a demand for such enlarged service has also been demonstrated, no other application for the adequate augmentation of presently available supplies to meet such market requirements being now before this Commission." "The consuming public in Detroit and elsewhere has * * * been unable to receive natural gas in sufficient volume to meet its needs and desires by reason of the inability of distributing companies to obtain adequate quantities of such gas. * * * The deficiency is becoming constantly greater." Although Panhandle "has applied for and received in a related case * * * authority for somewhat enlarged facilities which will enable it to increase to some extent its deliveries to said markets in Michigan, inter alia, it has not applied for sufficient facilities nor demonstrated its ability to serve adequately the needs of these markets in addition to the expanding requirements of those which it enjoys in the other areas which it supplies in Indiana, Illinois and Missouri." This latter finding of the Commission plainly means that any large increase in the volume of natural gas supplied by Panhandle in

---

[1] 52 Stat. 821, 831, 15 U.S.C.A. § 717r(b).

Detroit-Ann Arbor might be at the expense of other communities. On the other hand, approval of Michigan-Wisconsin's application will benefit not only Detroit-Ann Arbor but other communities as well: the Commission found that "a combined population of more than 1,388,000 people will for the first time secure the benefits to be derived from the introduction of natural gas service in the communities in Wisconsin, Iowa and Missouri" that Michigan-Wisconsin proposes to reach. Even in the Detroit-Ann Arbor area itself, entry of Michigan-Wisconsin will have advantages over service, however expanded, by Panhandle alone. It will result in competition there, and will also make "available to the Michigan market an alternative service and supply of natural gas from the area of the largest gas reserves in the United States. That such an independent additional and reliable source of supply will be of great value to the area to be served and benefit public convenience and necessity admits of no doubt."

▌ We think these and other findings are supported by substantial evidence and support the Commission's conclusion that the Michigan-Wisconsin project is, in the words of § 7(e) of the Natural Gas Act, required by "public convenience and necessity." Even if some of the findings were unsupported, the orders under review should be affirmed "since, without such findings, there would still be a basis in the record for the [Commission's] conclusions." [2]

▌ The Commission found that Michigan-Wisconsin is "able and willing properly to do the acts and to perform the service proposed." This finding, like that of public convenience and necessity, is expressly required by § 7(e) of the Act. We think it is also supported by substantial evidence. Panhandle says it is not supported by findings or proof of financial ability or a satisfactory rate schedule. The Act does not require such findings. The Commission did find, on sufficient evidence, that

Michigan-Wisconsin "has secured substantial reserves of natural gas and has submitted reasonable proof of the financial and economic feasibility of its project." Sec. 7(e) of the Act expressly authorizes the Commission to attach reasonable conditions "to the issuance of the certificate and to the exercise of the rights granted thereunder." The Commission attached the condition that Michigan-Wisconsin "shall obtain approval of its proposed plan of financings by the Securities and Exchange Commission * * *" because the parent company, American Light and Traction Company, was a regulated holding company and therefore no definite commitment for financing was possible without such approval. This was both practical and legal. Congress has not confronted the two Commissions with a delemma like that created by the famous municipal ordinance requiring that when two trains approach a grade crossing at the same time, both shall stop and neither shall proceed until the other has proceeded. The Commission also provided that the authorized facilities "shall not be used for the transportation or sale of natural gas subject to the jurisdiction of the Commission until Applicant submits to this Commission a schedule of rates and charges in a form satisfactory to this Commission providing for adequate and reasonable rates and charges consistent with the public interest." The Act does not require, and because of changing costs it would be illusory to require, that rates be fixed before construction begins.

▌ Panhandle says there were no findings or proof that it was unable or unwilling to supply the present and future requirements of the Detroit and Ann Arbor markets. We think findings to substantially that effect, supported by proof, are included among those we have quoted above.[3] We also think such findings unnecessary. Detroit and Ann Arbor are not the only markets involved. The Commission rightly took into account the interests of other communities now served by Panhandle and

[2] NLRB v. Newport News Shipbuilding & Dry Dock Co., 308 U.S. 241, 247, 60 S.Ct. 203, 207, 84 L.Ed. 219.

[3] The Commission's statement that Panhandle "has expressed a willingness to meet the enlarged requirements of said local markets" does not mean that Panhandle had proposed to the Commission a plan that would actually meet their actual requirements. So interpreted, the statement would contradict its context.

of still others that will be served by Michigan-Wisconsin. Even apart from such interests, nothing in the Natural Gas Act suggests that Congress thought monopoly better than competition or one source of supply better than two, or intended for any reason to give an existing supplier of natural gas for distribution in a particular community the privilege of furnishing an increased supply. No such privilege can be reconciled with the general mandate in § 7(e) of the Natural Gas Act that "a certificate shall be issued to any qualified applicant * * * if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed * * * and that the proposed service * * * is or will be required by the present or future public convenience and necessity." [4] Any such privilege is specifically negatived by § 7(g), which provides that "Nothing contained in this section shall be construed as a limitation upon the power of the Commission to grant certificates of public convenience and necessity for service of an area already being served by another natural-gas company." [5]

Panhandle says that even if the issuance of a certificate to Michigan-Wisconsin were warranted, it was error "to cut the rights of Panhandle in the Detroit and Ann Arbor markets to a volume below that which it is delivering under valid certificates." We do not find that this was done. The Commission said: "although Panhandle has no exclusive right to serve a market for all time and thus claim a monopoly, * * * there is no intention on the part of the Commission herein to modify, terminate or set aside any certificate heretofore issued by the Commission to Panhandle." The Com-

mission even imposed upon its grant to Michigan-Wisconsin these express "terms and conditions" for the affirmative protection of Panhandle: "(1) That Panhandle is permitted to deliver natural gas to Michigan Consolidated in accordance with the terms and conditions of its existing contracts during the life of such contracts, and (2) That upon the termination of such contracts, and upon mutually satisfactory terms, Panhandle is afforded reasonable opportunity to deliver and sell to Michigan Consolidated *not less than*[6] the annual volumes of gas delivered and sold by it for either the years 1942 or 1945 or the average delivered for the five-year period 1942 through 1946. Further, Panhandle shall have the right to participate in the future growth of the Detroit and Ann Arbor markets by being given the opportunity to deliver and sell such additional volumes of gas to Michigan Consolidated as the latter may require in excess of the volumes of gas then being contractually purchased by it from Panhandle and Michigan-Wisconsin, in order to maintain adequate service to consumers in the Detroit and Ann Arbor districts." Panhandle points out that it sold more gas in 1946 than in the previous years to which the Commission referred. But the conditions by which the Commission limited its grant to Michigan-Wisconsin did not limit Panhandle to the volume of those years. Condition (2) expressly fixed a minimum for Panhandle, not a maximum.[7]

We find no adequate basis for Panhandle's criticism of the procedure that was followed or its charge of bias against certain members of the Commission.

Affirmed.

[4] 56 Stat. 84, 15 U.S.C.A. § 717f(e). Cf. United States v. Pierce Auto Lines, 327 U.S. 515, 530–532, 66 S.Ct. 687, 696, 90 L.Ed. 821; especially footnote 20, where the Court says: "The [Interstate Commerce] Commission has recognized the value of reasonable competition."

[5] Cf. Kentucky Natural Gas Corp. v. Federal Power Commission, 6 Cir., 159 F.2d 215.

[6] Italics supplied.

[7] Moreover the Commission's order as we read it reserved to the parties including Panhandle the right to file applications at any time, and from time to time, for modification or termination of the conditions.