**HOME GAS COMPANY and The Manufacturers Light and Heat Company, Petitioners,**

v.

**FEDERAL POWER COMMISSION, Central Hudson Gas and Electric Corporation, and Rockland Light and Power Company, Respondents.**

No. 12726.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 1, 1955.

Decided March 15, 1956.

Mr. Edward S. Pinney, New York City, with whom Mr. John Peyton Randolph, Washington, D. C., was on the brief, for petitioners. Mr. E. Fontaine Broun, Washington, D. C., also entered an appearance for petitioners.

Mr. William C. Levy, Atty., Federal Power Commission, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Willard W. Gatchell, Gen. Counsel, Federal Power Commission, and William J. Grove, Asst. Gen. Counsel, Federal Power Commission, were on the brief, for respondent Federal Power Commission.

Mr. Morrell S. Lockhart, New York City, with whom Messrs. Justin R. Wolf, Washington, D. C., and Theodore J. Carlson, New York City, were on the brief, for respondent, Central Hudson Gas & Electric Corp.

Mr. Justin R. Wolf, Washington, D. C., with whom Mrs. Louise C. Powell, Washington, D. C., was on the brief, for respondent Rockland Light & Power Co.

Before EDGERTON, Chief Judge, and DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This case is before the court on a joint petition by the Home Gas Company and The Manufacturers Light and Heat Company for review, under Section 19 (b) of the Natural Gas Act,[1] of orders of the Federal Power Commission issued February 11, 1955, and April 4, 1955, as amended May 9, 1955, which orders directed Tennessee Gas Transmission Corporation to make connections and serve gas to Rockland Light and Power Company and Central Hudson Gas and Electric Corporation. Home and Manufacturers are wholly owned subsidiaries of The Columbia Gas System, Inc.

There is also before the court a petition under Section 19(b) which asks this court to direct the Commission to take additional testimony.

Home and Manufacturers are natural gas companies. Home supplies natural gas to Rockland and Central Hudson which it obtains from Manufacturers, its sole supplier. Rockland and Central Hudson sell gas on a retail basis to the ultimate consumer. Rockland is engaged in the distribution of natural gas in a number of communities in Orange and Rockland Counties, New York, the territories served being in rapidly growing sections of the New York City metropolitan area. Central Hudson is a New York corporation engaged in distributing gas and electricity in the Hudson River Valley, an area already fundamentally changed by way of increased population due to the recently completed New York State Thruway.

In the matter of Iroquois Gas Corporation and Tennessee Gas Transmission Corporation, Docket Nos. 2310, etc. of the Federal Power Commission, Tennessee sought approval for a major expansion of its facilities into the Greater New York market, then served by Transcontinental Gas Pipeline Corporation solely. Transcontinental filed a competing application, in which it proposed to render the same or similar service in the same area, to the exclusion of Ten-

1. 52 Stat. 821, as amended by 56 Stat. 83, 15 U.S.C. § 717 et seq.

nessee. It was in this proceeding that Rockland and Central Hudson sought and were granted permission to intervene, urging that any order authorizing Tennessee's entry into the Greater New York area be conditioned upon the requirement that Tennessee make available an additional firm supply of natural gas to Rockland and Central Hudson.

On December 28, 1954, the Commission disposed of all issues having to do with the applications of Tennessee and Transcontinental, except that it deferred decision on the issues presented by Rockland and Central Hudson until after oral argument thereon. Thereafter oral argument was had and on February 11, 1955, the Commission issued the following findings:

"(1) Tennessee Gas Transmission Company, a Delaware corporation, is a 'natural-gas company' within the meaning of the Natural Gas Act and subject to the jurisdiction of the Commission as heretofore found.

"(2) Tennessee is able and willing properly to do the acts and to perform the service proposed, and to conform to the provisions of the Natural Gas Act and the requirements, rules and regulations of the Commission thereunder.

"(3) Rockland Light and Power Company is engaged in the local distribution of natural gas in the State of New York.

"(4) Central Hudson Gas & Electric Corporation is engaged in the local distribution of natural gas in the State of New York.

"(5) The physical interconnections of facilities and the services hereinafter ordered to be provided by Tennessee to Rockland and Central Hudson are necessary and desirable in the public interest, and will place no undue burden upon Tennessee. Such interconnections and sales will not require the enlargement of Tennessee's facilities, nor will they impair Tennessee's ability to render adequate service to its existing and authorized customers.

"(6) Public convenience and necessity requires that the service to be rendered by Tennessee be limited as hereinafter ordered and conditioned."

The Commission also issued the following order:

"(A) Tennessee be and it is hereby directed to construct necessary interconnections of its transportation facilities with the proposed or existing facilities of Rockland and Central Hudson and deliver and sell volumes of natural gas not in excess of 5,000 Mcf per day or 1,287,000 Mcf per year for the period December 1, 1955 to December 1, 1957, and not in excess of 7,000 Mcf per day or 1,800,000 Mcf per year thereafter to Rockland; and not in excess of 4,500 Mcf per day or 1,100,000 Mcf per year for the period December 1, 1955 to December 1, 1957 and not in excess of 6,500 Mcf per day and 1,600,000 Mcf per year thereafter to Central Hudson, under appropriate rate schedules, *Provided, however,* that if Rockland and Central Hudson shall not have constructed, by December 1, 1955, the facilities necessary to enable them to accept deliveries from Tennessee as herein directed, then Tennesse shall be relieved of the duty to render the service herein ordered."

Thereupon a joint application and petition of Home, Manufacturers, United Fuel Gas Company and Ohio Fuel Gas Company was filed for reconsideration and vacation or for rehearing of the February 11, 1955 order, and for a stay of said order pending a final determination of the issues. Thereafter the order of April 4, 1955, as amended May 9, 1955, denying the petition for rehearing was filed.

Following this, the petition for review in this case was filed by Home and Man-

ufacturers, United and Ohio not being parties thereto.

Petitioners allege that they are aggrieved by the Commission's orders. Initially, petitioners point out that the instant orders will result in an economic loss to them of substantial revenues during 1956 and the ensuing years. Petitioners contend that, with the initiation of purchases of gas by intervenors from Tennessee, the sales of petitioners to intervenors will be reduced. To what degree and whether this reduction will amount to a substantial loss of revenues to petitioners is another question.[2] In balancing the equities from an economic standpoint, it would appear that both intervenors, Rockland and Central Hudson, will benefit from the availability of gas from Tennessee for a portion of their gas supply. The Commission directed its attention to the problem of the economic values and, in its order of February 11, 1955, set out in exact amounts the gas to be supplied by Tennessee to intervenors. We find this problem again considered in the order denying rehearing issued April 4, 1955, wherein the Commission ruled:

"The Columbia Intervenors' major complaint is that they will suffer a loss of profits and will have idle capacity if Central Hudson and Rockland are authorized to receive service from Tennessee. In our order of February 11, 1955,[3] we limited the services by Tennessee to preclude any such injury to Home. The testimony offered by Home suggests the possibility of loss of anticipated future profits, but there is no basis in the record for concluding that under Home's present rates, Home's sales will deteriorate with the authorized service to a point where Home's return is inadequate. On the contrary, it is clear from the record that both demand billing units and total annual sales will continue above the level on which Home's present rates are based."

There is also to be considered the factor of the public interest. We find substantial evidence in the record to support the contention that the private consumer will benefit by intervenors' purchase of gas from Tennessee. Not only is there the possibility that the individual consumer will be able to buy gas at a cheaper rate per Mcf but the Tennessee connection at the northern end of intervenors' extensive pipeline system will provide protection against failure of gas supply due to a line break[4] or other emergencies affecting Home's line and intervenors' own distribution facilities. Furthermore, Tennessee's added service as a second source of supply will render unnecessary the looping of Rockland's existing 6-inch feeder main to Orangeburg, New York, and permit, in addition, the development of markets in Central Hudson's northern territory. Of course, this creates an advantage to the intervenors but, again more important, the ultimate benefit will be enjoyed by the individual consumer, thus inuring to the public interest.

Petitioners allege that the Commission's orders deprive them (petitioners) of rights which were granted by certificates of public convenience and necessity issued by the Commission pursuant to Section 7(c) of the Act. In this connection we direct attention to Panhandle Eastern Pipe Line Co. v. F. P. C., 3 Cir., 1955, 219 F.2d 729, 731, certiorari

---

2. The tremendous growth in residential and industrial expansion of the territories now being served by intervenors is such that intervenors anticipate that their gas requirements will double within the next five years.

3. In the Joint Appendix this date appears: "February 4, 1955."

4. Due to the number of river crossings, this is important as these breaks are difficult to repair, particularly during the winter months when the rivers may be covered with ice.

denied 349 U.S. 945, 75 S.Ct. 874, 99 L. Ed. 1272, where the court points out:

"Whatever may be the outcome of Panhandle's effort to obtain authority for reduction of its supply of gas to Michigan Consolidated, the gas to be delivered to that concern by American Louisiana is not in displacement of any part of its Panhandle allotment but over and above it in order to provide for the increased requirements of the Michigan consolidated territory."

■ That the petitioners have not been deprived of any rights granted them in certificates of public convenience and necessity heretofore issued by the Commission is evident from a reading of Panhandle Eastern Pipe Line Co. v. F. P. C., 83 U.S.App. D.C. 297, 169 F.2d 881, certiorari denied, 1948, 335 U.S. 854, 69 S.Ct. 81, 94 L.Ed. 402, where, under a similar set of circumstances, the court said, 169 F.2d at page 883, 884:

"The Commission rightly took into account the interests of other communities now served by Panhandle and of still others that will be served by Michigan-Wisconsin. Even apart from such interests, nothing in the Natural Gas Act suggests that Congress thought monopoly better than competition or one source of supply better than two, or intended for any reason to give an existing supplier of natural gas for distribution in a particular community the privilege of furnishing an increased supply."

Again, in the Kentucky Natural Gas case, Kentucky Natural Gas Corp. v. F. P. C., 6 Cir., 1947, 159 F.2d 215, at page 218, it was pointed out:

"Its chief contention in attempting to meet this burden is that it has been satisfactorily supplying this territory since 1932 by obtaining natural gas from Panhandle and delivering it to Central Illinois through its own facilities at a point on the Indiana-Illinois state line, and that while Central Illinois has been earning a fair return on its rate base, Kentucky Natural has been operating at a loss for many years and its ability to render adequate service at reasonable rates in its remaining area would be jeopardized by the loss of its sales to Central Illinois. But a right to continue to exclusively serve the Mattoon area is not granted to it by the Natural Gas Act. On the contrary, § 717f(g), Title 15 U.S.C.A. appears to specifically recognize the right of the Federal Power Commission to issue a certificate of public convenience and necessity to a competitor, by providing 'Nothing contained in this section shall be construed as a limitation upon the power of the Commission to grant certificates of public convenience and necessity for service of an area already being served by another natural gas company.'"

■ While we think these cases dispositive of the present appeal, there is one further point which we feel obliged to discuss. Petitioners contend that, assuming the Commission has power under the Act, 15 U.S.C.A. § 717f(a), (e) and (g), to grant a certificate of public convenience and necessity to a second supplier for service to an area already being served, the Commission has no power to require such service by order pursuant to § 717f(a), which reads:

"Whenever the Commission, after notice and opportunity for hearing, finds such action necessary or desirable in the public interest, it may by order direct a natural-gas company to extend or improve its transportation facilities, to establish physical connection of its transportation facilities with the facilities of, and sell natural gas to, any person or municipality engaged or legally authorized to engage in the local distribution of natural or artificial gas to the public, and for such purpose to ex-

tend its transportation facilities to communities immediately adjacent to such facilities or to territory served by such natural-gas company, if the Commission finds that no undue burden will be placed upon such natural-gas company thereby: *Provided,* That the Commission shall have no authority to compel the enlargement of transportation facilities for such purposes, or to compel such natural-gas company to establish physical connection or sell natural gas when to do so would impair its ability to render adequate service to its customers."

To uphold petitioners' contentions would in effect force us to consider the above noted sections as being mutually exclusive. This we cannot do. Indeed, we find them complementary. No basis exists in the legislative history of the Act, and certainly none in the plain language of the text, for the creation of a third limitation on § 717f(a), as petitioners urge, namely, where the area involved is already being served by a natural gas company. Cf. Manufacturers Light & Heat Co. v. F. P. C., 3 Cir., 1953, 206 F.2d 404.

■ With respect to petitioners' final contention, i. e., that Tennessee is not able and willing to provide the proposed service, we find no merit in this claim. It appears that while before the Commission Tennessee stated that it sells gas to Home's affiliates and that it was contrary to the policy of Tennessee to contract voluntarily with the customer of one of its (Tennessee's) customers, nevertheless Tennessee admitted that it has capacity to supply Rockland and Central Hudson and that, if directed to supply them, it would do so. Tennessee has not appealed.

The motion of petitioners to adduce further testimony is denied.

The Commission's orders on review are

Affirmed.