CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent,

and

Village of Milford and City of Bushnell, Intervenors.

Nos. 14454, 14628.

United States Court of Appeals Seventh Circuit.

Nov. 3, 1964.

684

Bradford Ross, Washington, D. C., Elmer Nafziger, Springfield, Ill., Sherman S. Poland, Ross, Marsh & Foster, Washington, D. C., Stevens, Herndon, Nafziger & Mohan, Springfield, Ill., for petitioner.

Richard A. Solomon, Leonard E. Poryles, F. P. C., Washington, D. C., Robert L. Russell, Asst. General Counsel, Peter H. Schiff, Leonard Poryles, Attorneys, for respondent.

Orville N. Foreman, Jacksonville, Ill., Theodore C. Rammelkamp, Robinson, Foreman, Rammelkamp, Bradney & Hall, Jacksonville, Ill., Cecil A. Beasley, Jr., John W. Kern, III, Kilpatrick, Ballard & Beasley, Washington, D. C., for intervenor Village of Milford, Ill.

U. S. Collins, Lybarger & Collins, Bushnell, Ill., for intervenor City of Bushnell, Ill.

Before DUFFY, KILEY and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

Central Illinois Public Service Company, (Central Illinois) or (petitioner), has filed a petition pursuant to Section 19(b) of the Natural Gas Act (15 U.S.C. § 717r), to review Opinion No. 402 and paragraph (B) (iii) of the accompanying order of the Federal Power Commission issued on September 17, 1963 (30 FPC 698) which has not, as yet, been published.

The Federal Power Commission attached conditions to the certificates of public convenience and necessity which were granted to Panhandle Eastern Pipe Line Company (Panhandle) and to Trunkline Gas Company (Trunkline) on July 27, 1962. The conditions required these companies to render gas service to the city of Bushnell and to the village of Milford, both located in Illinois.

The requests for service by Bushnell and Milford constituted a small part of a complex consolidated proceeding before the Commission, designated American Louisiana Pipe Line Company, Commission Docket No. G–2306. This phase of the proceeding was commenced in 1960 when Panhandle and Trunkline filed applications for certificates of public convenience and necessity under Section 7 (c) of the Natural Gas Act for the proposed enlargement of their system capacities.

Central Illinois, to whom Panhandle proposed to increase service, petitioned for and was granted leave to intervene in support of Panhandle's request which included an allocation of gas for service by petitioner to Bushnell but none to Milford.

Later, Bushnell and Milford each petitioned for leave to intervene, requesting the Commission to attach such reasonable conditions to the certificates of public convenience and necessity which would order Panhandle and Trunkline to sell directly to Bushnell and Milford respectively, for their proposed municipally operated natural gas distribution systems.

On July 27, 1962, after hearing, the Commission issued an order adopting the Examiner's decision granting certificates to Panhandle and Trunkline for enlarging their systems. The Commission reserved for later decision, the issue of gas service to Bushnell and Milford.

On January 22, 1963, the Examiner issued his decision which granted the request of Bushnell and Milford for gas service by attaching conditions to the certificates of Panhandle and Trunkline. The Commission, on September 17, 1963, modified and adopted the Examiner's initial decision. An application for a rehearing was denied.

On January 2, 1964, Central Illinois filed a petition for review in this Court. On the following day, it filed a similar petition for review in the Court of Appeals for the Third Circuit. This latter petition was thereafter transferred to this Court.

Bushnell is a city of about 3700 population. For thirty years it has served its residents with a municipally-owned propane air gas system. Bushnell sought a supply of natural gas for this distribution system. Bushnell proposed to construct and operate a pipeline approximately thirty-nine miles in length.

The village of Milford is an incorporated municipality with a population of approximately 1700. Its intervention in this proceeding was to obtain an allocation of natural gas from Trunkline for the municipal utility it proposed to build and operate. The pipeline to be constructed would be thirteen miles in length.

The Commission applied the criteria set forth in Section 7(a) of the Natural Gas Act (15 U.S.C. 717f(a)) and concluded an allocation to Milford was necessary and desirable in the public interest, and ordered Trunkline to connect with Milford's proposed lateral transmission line and to sell 906 Mcf[1] of gas to Milford, its peak-day need. The Commission again applied the criteria of Section 7(a) and ordered Panhandle to connect with Bushnell's proposed lateral at Canton, Illinois, and to sell 2000 Mcf of gas to Bushnell, its peak-day need, for some 5500 persons living in the proposed service area.

Central Illinois and others opposed Bushnell's request for natural gas. However, Central Illinois was unwilling to sell natural gas to Bushnell from its nearby source of supply unless Bushnell would first sell to Central Illinois its electric and gas utility in one package. This, Bushnell refused to do.

Petitioner urges that the Commission's order directing service to Bushnell and to Milford must be reversed because the requests of Bushnell and Milford were not brought to the Commission's attention under Section 7(a) of the Act. Petitioner also claims the Bushnell order is defective in that it would require Panhandle to make a sale to Bushnell for its own use in the generation of electrical energy, and that this would not be a sale in interstate commerce for resale and, consequently, not within the jurisdiction of the Commission.

Another contention of petitioner is that the Commission's order directing service to Milford was never legally authorized in the manner prescribed by Illinois law, in that the plan approved by the voters of Milford is different than the one submitted to the Commission.

Central Illinois further argues that the Bushnell and Milford proposals are not feasible and are not supported in this record by the requisite testimony of expert witnesses.

We hold the Commission is not required to depend on conclusions of expert witnesses in deciding technical matters within the Commission's area of expertise, and may make such determinations from the evidence in the record. Market Street Railway Co. v. Railroad Commission of State of California, 324 U.S. 548, 65 S.Ct. 770, 89 L.Ed. 1171; Spitzer v. Commissioner of Internal Revenue, 8 Cir., 153 F.2d 967, 972, 5 A.L.R. 2d 1114.

Petitioner claims that the only way the Commission may require a pipeline to render gas service to a distributor is pursuant to a proceeding formally brought by the distributor under Section 7(a) of the Act. Hence, petitioner attacks the validity of the procedure where-

1. Thousand cubic feet.

by the Commission, pursuant to Section 7(e) of the Act, attached conditions to the certificates granted to Panhandle and Trunkline, requiring those pipelines to connect and sell gas to Bushnell and Milford. We do not think Sections 7(a) and 7(e) are mutually exclusive, but rather that they are complimentary. Home Gas Co. v. Federal Power Commission, 97 U.S.App.D.C. 300, 231 F.2d 253, 258, cert. den. 352 U.S. 831, 77 S.Ct. 45, 1 L.Ed. 2d 51.

■ Here, the Commission followed the Examiner in applying the standards contained in Section 7(a) to evaluate the Bushnell and Milford applications. We hold that inasmuch as the Commission followed the standards of Section 7(a), that is sufficient under the Act.

■ We now consider petitioner's claim that the Commission's order is invalid because it requires Panhandle to make a nonjurisdictional direct sale for Bushnell's own use in generation of electric energy in the municipal power plant. The fact is, the Commission's order does not require Panhandle to make a nonjurisdictional direct sale. Bushnell's peak-day requirements for the third year of its system's operation would be slightly in excess of 2000 Mfc. This peak-day demand comprises service to its firm resale customers only. The record discloses that Bushnell planned to use natural gas as fuel in its electric plant on an "interruptible" or "non-firm" basis. In other words, on the coldest days of the year, the entire supply of gas permitted to be purchased from Panhandle would unquestionably be resold by Bushnell. On those days, any gas service to the electric plant would have to be interrupted and the electric plant would have to use an alternative fuel. Under the circumstances and conditions here present, we hold the Commission's order is not invalid in requiring, as alleged, a nonjurisdictional sale to Bushnell.

Central Illinois argues extensively that since it can allegedly render gas service to the consumers of Bushnell and Milford at lower rates than those at which the municipal systems can, the Commission abused its discretion in finding that the Bushnell and Milford proposals were required by public convenience and necessity and in the public interest.

Central Illinois has made several offers to purchase Bushnell's gas distribution system, which proposals have been rejected by the city. Petitioner has no franchise to distribute gas in Bushnell. Both Central Illinois and Bushnell have been firm in their respective positions. Although petitioner's line runs within four miles of Bushnell, it refuses to sell gas or transport gas for the municipally-owned distribution system.

■■ In applying the public convenience and necessity standard, the Commission should consider all relevant factors in reaching a decision. We hold that the Commission's weighing of the conflicting considerations of Central Illinois and Bushnell were reasonable and were within its broad discretion.

■ In Milford's case, as in Bushnell's, the Commission was not considering competitive applications. For thirty years, petitioner had a franchise in Milford, but never attempted to exercise that franchise. Petitioner did not introduce studies concerning service it would render to Milford, but merely quoted rates it was charging elsewhere. The Commission did consider petitioner's claim that it could render more economical service, but held "as in the case of Bushnell we are not persuaded by the arguments of CIPSCO (Central Illinois) and the Pipeline Company that CIPSCO can distribute gas in Milford at rates lower than those proposed by the municipality and that Milford's request should therefore be denied. The people of Milford have expressed their desire for a municipal system and the system proposed is feasible on engineering, economic and financial bases. * * *" We hold the objections of Central Illinois in this respect cannot be sustained.

Petitioner claims Milford is not legally authorized to engage in the local distribution of natural or artificial gas within

the meaning of Section 7(a) of the Gas Act. Petitioner claims that there were differences in detail between the village's current proposal and the original proposal which had been approved by the voters of Milford.

■ The legislative history shows that Section 7(a) was intended to benefit communities desiring gas service from unwilling pipeline companies. The purpose of the language "or legally authorized to engage in the local distribution" was to make it possible for a community which had no existing distribution system, to seek gas service from a pipeline upon the showing that either a proposed private or public system would distribute gas if it could obtain a supply of gas.

■ In passing the Natural Gas Act, Congress took care not to intrude unnecessarily upon state prerogatives. It seems clear that Congress did not intend the Commission to act as a local forum on matters over which it had no regulatory jurisdiction.

It might be noted that the Commission did consider the ordinance passed by the village board and approved by the voters. The Commission noted that Milford's final plan as approved by the Commission did not appear to differ significantly from the original plan.

■ The Commission decided that it was satisfied that Milford would be able to use the gas reserved for it. However, whether the village will legally be able to operate its system pursuant to the plan finally presented to the Commission, is a question which the Commission would leave to the state courts. We think the Commission's position on this question is proper.

Several other objections have been urged by petitioner. We have considered them and believe that they do not need further discussion. In our view, such objections are without merit.

We hold that the Commission's order hereinbefore described should be and hereby is

Affirmed.