**PANHANDLE EASTERN PIPE LINE COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**No. 11734.**

United States Court of Appeals Third Circuit.

Argued May 22, 1956.

Decided July 25, 1956.

3. Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 3 Cir., 1953, 204 F. 2d 675, 679–680, rehearing denied 204 F. 2d 682, 683.

William E. Miller, Washington, D. C., and Harry S. Littman, Washington, D. C. (Steptoe & Johnson, Washington, D. C., on the brief), for Panhandle Eastern Pipe Line Co., petitioner.

Charles V. Shannon, Washington, D. C. (Wheat, May & Shannon, Washington, D. C., John Dern, Arthur R. Seder, Jr., Sidley, Austin, Burgess & Smith, Chicago, Ill., on the brief), for Michigan Consolidated Gas Co.

David R. Kaplan, Detroit, Mich. (Gerald K. O'Brien, Pros. Atty., Wayne County, Mich., Leonard Simons, Special Asst. Pros. Atty., Wayne County, Detroit, Mich., on the brief), for county of Wayne, Michigan, intervenor.

Robert Reese, Detroit, Mich. (Paul T. Dwyer, Corp. Counsel, James H. Lee, Asst. Corp. Counsel, Public Utilities, Detroit, Mich., on the brief), for City of Detroit, intervenor.

Louis Flax, Washington, D. C. (Willard W. Gatchell, Washington, D. C., Gen. Counsel, on the brief), for respondent, Federal Power Commission.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

Panhandle Eastern Pipe Line Company, a natural gas company, seeks review of that part of an order of the Federal Power Commission issued on June 7, 1955 [1] which denied Panhandle's application to reduce its natural gas service to Michigan Consolidated Gas Company, a local public utility serving the metropolitan area of Detroit, Michigan, and other communities in that state. Michigan Consolidated, the City of Detroit and the County of Wayne, Michigan, have intervened in support of the Commission's order. The order here under review stems from proceedings conducted by the Commission pursuant to this court's remand. Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 3 Cir., 1953, 204 F.2d 675; 3 Cir., 204 F.2d 925. The pertinent background facts are as follows:

Panhandle produces and purchases natural gas in the states of Texas, Oklahoma and Kansas, which is transported through its pipeline system from those states into Missouri, Illinois, Indiana, Ohio and Michigan. Its gas is sold to distributing utilities for resale and directly to industries located along the route of the pipeline. Since 1936 Panhandle has delivered to Michigan Consolidated up to 125,000 Mcf of gas per day at Detroit under a contract originally entered into on August 31, 1935. By its terms this contract expired on December 31, 1951 and by letter dated May 25, 1950, Panhandle served notice on Michigan Con-

---

1. Central West Utility Company and Missouri Power and Light Company seek review of other parts of this order on unrelated issues at our docket No. 11,729, 3 Cir., 236 F.2d 287.

solidated that it was cancelling the contract effective on its expiration date.

On June 21, 1951 Panhandle had filed an application with the Commission for leave to reduce its service from 125,000 Mcf per day to 87,500 Mcf per day to Michigan Consolidated at Detroit. In another proceeding before the Commission involving the allocation of all of Panhandle's gas among its customers Michigan Consolidated had requested an increase to 200,000 Mcf per day in the deliveries to it at Detroit. The Commission in that proceeding, in its Opinions Nos. 218 and 218–A and accompanying orders issued on August 31 and October 15, 1951,[2] respectively, rejected Michigan Consolidated's request for delivery of gas in excess of 125,000 Mcf per day [3] and provided that Panhandle should make deliveries totaling 1,007,683 Mcf of natural gas per day to all its customers although the designed peak day capacity of its pipeline was only 850,000 Mcf. On June 20, 1952, some months after the issuance of these orders the Commission issued its Opinion No. 229 and accompanying order in which authorization was denied to Panhandle partially to abandon its service to Michigan Consolidated as proposed.[4]

A petition to review each order was filed by Panhandle in this court. In respect to the order directing Panhandle to deliver to all its customers more than its designed peak day capacity this court held that the Commission, while purporting merely to eliminate discrimination among Panhandle's customers, in effect required Panhandle to enlarge its pipeline facilities, an action not authorized by the Natural Gas Act, 15 U.S.C.A. § 717 et seq. The cause was accordingly remanded to the Commission for determination of the proper allocation of Panhandle's existing capacity among its customers. Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 3 Cir., 1953, 204 F.2d 675. In respect to Panhandle's petition for review of the order denying its request for partial abandonment of service to Michigan Consolidated the Commission's order was vacated and the cause remanded to the Commission for reconsideration in the light of existing circumstances, since this issue was directly related to the issues involved in the other case. Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 3 Cir., 1953, 204 F.2d 925.

Upon remand the Commission consolidated the allocation and abandonment proceedings and certain other related matters then pending before it. Hearings were held before an examiner who filed his decision on April 19, 1955. Exceptions were filed to this decision by Panhandle, the Commission Staff and certain intervenors. The Commission by its order issued on June 7, 1955 which is here under review modified the examiner's decision and affirmed it as modified. The Commission's order, inter alia, denied Panhandle's application to reduce its service to Michigan Consolidated. It is this part of the order which Panhandle contends was erroneous and which we are here asked to set aside.

The principal contentions of Panhandle are based upon the premise that, as it asserts, the Commission had in 1947 authorized the partial abandonment of its service to Michigan Consolidated and had determined Panhandle's obligations to that company in proceedings which involved the issuance of a certificate of public convenience and necessity to Michigan-Wisconsin Pipe Line Company,[5] an

---

2. Docket No. G–1116 et al., 10 F.P.C. 328; 10 F.P.C. 361.

3. This court affirmed this part of the orders insofar as they related to Michigan Consolidated. Michigan Consol. Gas Co. v. Federal Power Comm., 3 Cir., 1953, 203 F.2d 895.

4. On August 14, 1952, in an order accompanying Opinion No. 229–A, Panhandle was denied rehearing of this order.

5. Docket No. G–669. Order granting certificate issued on November 30, 1946, 5 F.P.C. 953; modified December 14, 1946, 5 F.P.C. 993, and December 30, 1946, 5 F.P.C. 1022; Opinion No. 147 issued February 7, 1947, 6 F.P.C. 1; Supplemental Opinion No. 147–A and Supple-

affiliate of Michigan Consolidated in the American Natural Gas Company System. It strenuously argues that the action of the Commission in those proceedings must be given effect in this proceeding upon principles of res judicata. The contentions of Panhandle in this regard we find to be wholly without merit.

■ In the first place the doctrine of res judicata can have no application to a proceeding, such as this, which involves a determination of the present or future public convenience or necessity with respect to the continuance or abandonment of natural gas service. For, as Judge Learned Hand said in a somewhat analogous situation in United States Feldspar Corporation v. United States, D.C.N.Y. 1930, 38 F.2d 91, 95, "No estoppel is relevant upon that inquiry, no inconsistency important, except as it helps to ascertain the very truth; the inquiry is not to be assimilated to the ordinary suit inter partes, where no more is at stake than the settlement of a private dispute." In a situation such as this the Commission is exercising delegated legislative power to make a rule to guide the conduct of the parties in the future. It is not exercising quasi-judicial power to determine past or present rights or liabilities, as was done in the case of In re Federal Water & Gas Corp., 3 Cir., 1951, 188 F.2d 100, certiorari denied Cherney Corp. v. Securities & Exchange Comm., 341 U.S. 953, 71 S.Ct. 1018, 95 L.Ed. 1375, in which this court did apply the doctrine of res judicata. That case, upon which Panhandle relies, has no relevance here.

Moreover the premise upon which Panhandle bases its argument cannot survive examination. For it is apparent upon examining the record in the proceedings to which Panhandle refers that the Commission did not there determine that the public convenience or necessity permitted the partial abandonment of its service to Michigan Consolidated at Detroit, nor grant Panhandle permission to abandon such service. Those proceedings involved the right of a new pipeline company, Michigan-Wisconsin, to enter the Detroit area to supply natural gas to Michigan Consolidated. Its entry was strongly contested by Panhandle which had theretofore been the sole supplier and which sought, by defeating Michigan-Wisconsin in that proceeding, to remain so. Michigan-Wisconsin, on the other hand, sought to supply all of Michigan Consolidated's requirements above 125,000 Mcf per day up to December 31, 1951, the date of the termination of Panhandle's contract, and to become its sole supplier, to the exclusion of Panhandle, after that date. Thus the application, if granted in the terms requested, would have eliminated Panhandle entirely from the Detroit area, a market in which it had pioneered and in which it had so-called grandfather's rights.

It was thus in the setting of a proceeding in which a competitor was seeking to compel Panhandle ultimately to abandon all service to the Detroit area, an abandonment to which Panhandle was then bitterly opposed, that the Commission made the determinations upon which Panhandle now seeks to rely. The purpose of those determinations, however, was merely to clarify Panhandle's continuing rights in the Detroit area as against the rights then being granted to Michigan-Wisconsin. It was for this reason that the Commission ultimately conditioned the certificate which it had granted to Michigan-Wisconsin by providing that Panhandle should be permitted to deliver to Michigan Consolidated during the life of their contract the gas called for thereby and upon the termination of the contract should be "afforded reasonable opportunity to deliver and sell to Michigan Consolidated not less than the annual volumes of gas delivered and sold by it for either the years 1942 or 1945 or the average delivered for the five-year period 1942 through 1946." The Commission furthermore provided in its order that "Panhandle shall have

mental Order issued March 12, 1947, 6 F.P.C. 58, 91; affirmed Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 1948, 83 U.S.App.D.C. 297, 169 F. 2d 881, certiorari denied 335 U.S. 854, 69 S.Ct. 81, 94 L.Ed. 402.

the right to participate in the future growth of the Detroit and Ann Arbor markets by being given the opportunity to deliver and sell such additional volumes of gas to Michigan Consolidated as the latter may require in excess of the volumes of gas then being contractually purchased by it from Panhandle and Michigan-Wisconsin, in order to maintain adequate service to consumers in the Detroit and Ann Arbor districts." [6]

In Opinion No. 147–A which accompanied this formulation of the conditions imposed upon Michigan-Wisconsin, the Commission said:

"Commissioner Olds in his dissenting opinion, at page 43, states that our order of November 30, 1946, is fundamentally defective to the extent that it fails to make a definitive finding as to Panhandle's rights in the market served by Michigan Consolidated. In considering the rights of Panhandle in this matter we have at all times attempted to recognize among other things that managerial discretion plays an important role in the operation of a large pipeline system. A forecast of what the future will bring must, of necessity, be clothed with some uncertainty. The markets may develop to a greater extent than supposed. Further, Panhandle's future plans are not absolutely certain. It hopes to render service to Canada, increase supplies in other markets and serve new customers. However, until Panhandle is able to do what it believes it must in rendering such public service, we believe it most unwise in the meantime to place the company in an unfair or unfortunate position. Therefore, a finding relating to what will happen many years in the future can be no more definitive than the future itself.

"The evidence which was offered by Michigan-Wisconsin and received

in this reopened proceeding relates directly to the main interest of the intervenor, Panhandle, in the entire proceedings—namely, in what manner, if any, it will be affected by the Commission's action in issuing a certificate to Michigan-Wisconsin." [7]

In a subsequent opinion the Commission, in discussing Panhandle's contention that its right to abandon part of its service to Michigan Consolidated was adjudicated in this proceeding, said:

"The question of permitting Panhandle to abandon any portion of its service at Detroit under Section 7(b) of the Act was not before the Commission in that proceeding. The Commission was there presented with the question of resolving differences between two pipeline companies, Michigan-Wisconsin and Panhandle, over the sharing of the Detroit and Ann Arbor markets. The opinions and orders in that proceeding did not even purport to deal with a situation in the future where the primary consideration would be the effect of an abandonment of service upon the general public convenience and necessity." [8]

It is impossible for us to understand how Panhandle can seriously regard the actions of the Commission in the proceedings in Docket No. G–669 as authorizing any partial abandonment of its service to Detroit. We find the contention so wholly lacking in merit as to border on the frivolous.

We come then to Panhandle's alternative contention which is that the order of the Commission denying its application for partial abandonment of its service to Michigan Consolidated should be set aside as arbitrary and capricious. We find this contention to be equally without merit.

Panhandle argues that the Commission's action is erroneous because it com-

6. Order accompanying Opinion No. 147–A issued March 12, 1947. 6 F.P.C. 91.

7. Opinion No. 147–A, issued March 12, 1947, 6 F.P.C. 58, 71–72.

8. Opinion No. 229, issued June 20, 1952.

pels Panhandle to continue to supply gas to Michigan Consolidated which it needs to fulfil its obligations to its other customers. But we are not here concerned with the allocation by the Commission of Panhandle's gas among its customers or whether the gas which Panhandle seeks to withhold from Michigan Consolidated should go to other customers. Following the remand of the allocation proceeding to the Commission by this court [9] Panhandle was found by the Commission to have an actual peak day capacity of 969,-000 Mcf. In addition thereto it had received temporary authorization on September 2, 1954 to increase its capacity by 100,000 Mcf per day. Its total capacity thus came to exceed the total volume of gas, 1,007,683 Mcf per day, which the Commission had previously allocated to its customers and so the Commission concluded that, except as regards the Liberty Lateral not here involved, Panhandle's attack upon the allocation had become moot. Panhandle has not sought a review of that determination and the allocation must, therefore, be accepted for the purposes of this proceeding.

■■ The Commission not only made the finding in the present proceeding that "Panhandle has failed to meet the burden of justifying its proposed partial abandonment of its limited service deliveries to Michigan Consolidated at Detroit * * *," [10] but it went further and made the positive finding that "The public interest does not now permit the abandonment by Panhandle of any part of the services now rendered by it to Michigan Consolidated * * *" [11] The sole question is whether these findings have substantial support in the evidence. Our examination of the record leaves us in no doubt as to this. Michigan Consolidated offered evidence as to the shortage of gas in the Detroit area and the present and increasing probable future demands for gas in that area. Panhandle, however, largely relied upon the claimed estoppel of the alleged adjudication by the Commission in its favor in the prior proceedings to which we have referred. The determination of the question of public convenience and necessity is one which the law has confided to the Commission. Since its finding on that question in this case has substantial support in the record it is conclusive.

Finally Panhandle points out that the Commission has authorized the American Louisiana Pipe Line Company, another affiliate of Michigan Consolidated in the American Natural Gas Company System, to construct a pipe line of approximately 300,000 Mcf daily capacity from Louisiana to Detroit, Michigan,[12] and says that a substantial amount of this gas will be available to Michigan Consolidated. It accordingly argued to the Commission and argues here that the receipt of this gas will enable Michigan Consolidated to dispense with 37,500 Mcf per day of Panhandle's present Detroit deliveries of gas and thus justify the abandonment by Panhandle of its service to that extent, being the abandonment applied for in this proceeding. The American Louisiana pipe line is not yet in operation, however. Indeed the project has been strongly opposed by Panhandle itself.[13] If and when it actually comes into operation and Michigan Consolidated receives an allocation of its gas Panhandle will be free to renew its application for partial abandonment of its service to Detroit.

The order of the Federal Power Commission will be affirmed.

9. Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 3 Cir., 1953, 204 F.2d 675.

10. Finding 16, initial decision issued April 19, 1955, affirmed by Commission by order issued June 7, 1955.

11. Finding 19, Ibid.

12. Opinion No. 276, issued October 1, 1954, 6 P.U.R. 3d 476.

13. See Panhandle Eastern Pipe Line Co. v. Federal Power Comm, 3 Cir., 1955, 219 F.2d 729.