153 N.J. Super. 214 (1977)
379 A.2d 467
SAINT JOSEPH'S HOSPITAL AND MEDICAL CENTER, APPELLANT,
v.
JOANNE E. FINLEY, COMMISSIONER OF HEALTH, AND HEALTH CARE ADMINISTRATION BOARD, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1977.
Decided October 14, 1977.
*217 Before Judges LYNCH, MILMED and ANTELL.
*218 Mr. Burton L. Eichler argued the cause for appellant (Messrs. Brach, Eichler, Rosenberg & Silver, attorneys; Messrs. Eichler and Barry H. Ostrowsky on the brief).
Mr. Douglass L. Derry, Deputy Attorney General, argued the cause for respondents (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by LYNCH, P.J.A.D.
St. Joseph's Hospital and Medical Center (St. Joseph's) appeals from a decision of the Health Care Administration Board (HCAB) of the Department of Health (Department) rendered on September 2, 1976 which denied St. Joseph's application (pursuant to N.J.S.A. 26:2H-7 et seq.) for a certificate of need for the establishment of a cardiac surgery program at its facility in Paterson, New Jersey.
On appeal St. Joseph's contends that (1) the action of HCAB in denying its application was, as stated in its brief, "an Arbitrary, Capricious and Unreasonable Action, Both Procedurally and Substantively," and (2) "HCAB Improperly Used Licensing Standards in Denying the Applicant a Certificate of Need."

I
Appellant's first contention is that the action of HCAB was "procedurally" improper because its "Findings" were based on an incomplete tape recording of the deliberations leading to the decision. We find no merit in the contention.
Appellant next contends that the findings and conclusions of HCAB were not supported by substantial credible evidence in the record and therefore must be rejected. In this respect it contends that HCAB improperly rejected the findings and recommendations of Hearing Examiner James A. Yocum, *219 who had recommended granting of appellant's application for the certificate of need.
We have carefully reviewed the record and recognize that appellant has offered some persuasive arguments that its particular facility appears to be suited to establishment of a cardiac surgical unit, including the fact that it has established a substantial operation of diagnostic catheterization procedures, having performed in excess of 875 in the year 1975 and an average of 86 a month in 1976, or approximately 1,000 for that year. All experts agreed that one in every four catheterizations ultimately results in cardiac surgery and also that it is desirable that the catheterization laboratory and open heart surgery unit should be in the same hospital. In this respect, therefore, St. Joseph's demonstrated that it would probably meet the quantitative guideline that a cardiac surgery facility should satisfy, i.e. from four to six cases a week, as well as providing catheterization and open heart surgery in its own institution.
However, in fulfilling the legislative objective in this context St. Joseph's facility, and its virtues, cannot be considered in isolation, divorced from the responsibility which has been imposed upon the Department of Health in carrying out the legislative policy. N.J.S.A. 26:2H-1 provides that the Department has "the central, comprehensive responsibility for the development and administration of the State's policy with respect to health planning, hospital and related health care services" in furtherance of the policy that "hospital and related health care services of the highest quality, of demonstrated need, efficiently provided and properly utilized at a reasonable cost are of vital concern to the public health."
In considering whether to grant a certificate of need for the establishment of a health care service the applicant must establish that the proposed project is necessary to provide required health care "in the area" to be served and will contribute to the "orderly" development of adequate and effective health care services. N.J.S.A. 26:2H-8. *220 And in making such a determination the issuing authority must take into consideration, among other things, "(a) the availability of facilities and services which may serve as alternatives and substitutes, (b) the need for special equipment and services in the area, * * *." Id.; emphasis supplied.
Further, N.J.S.A. 26:2H-3 provides:
The commissioner shall recognize the State Health Planning Council, the comprehensive area-wide health planning agencies and area planning councils as the recommending agencies in carrying out the purposes of this act. The State Health Planning Council shall act as the coordinating agency for the comprehensive area-wide health planning agencies and area planning councils in all matters, including but not limited to, comprehensive studies of requirements in various areas of the State for health care facilities.
On October 8, 1975 the Acting Commissioner of Health recommended that St. Joseph's application be denied. He noted that the State Health Planning Council had recommended that the application be denied and that he (Dr. Watson E. Newman) was making the same recommendation because, as he said:
There is no demonstrated need for this project at this time. In making this determination, the availability of existing facilities and services in the proposed service area were taken into consideration. Facilities currently providing cardiac surgery services in Planning Areas 1 and 2 are presently underutilized.
The hearing before Hearing Examiner Yocum followed and, as we have said, he recommended granting of the certificate of need to St. Joseph's, but HCAB rejected his recommendation and denied the application. This appeal followed.
The decision of HCAB was reached upon the following statement and motion by Mr. Westcott, a member of the Board, as they appear in the minutes of the Board of September 2, 1976:
*221 I am troubled by the finding of the Hearing Master in the case of St. Joseph's application for a cardiac surgery unit. It seems clear, on the face of it, that there is no demonstrated need for a third cardiac surgery unit in Area I.[1] The fact that the present two units are poorly utilized raises quite separate issues.
The reasons were alluded to only indirectly in the testimony, and by the Hearing Master. In view of the large volume of cardiac catheterization done by St. Joseph's, the Hearing Master's contention that the hospital should also have capacity for cardiac surgery has some merit, but if it is approved, it should be in the context of standards established by the Department, and as part of the carefully organized regional plan for such services, that St. Joseph's can reapply when these new standards are issued.
Therefore, I move that the Certificate of Need be denied for the reasons stated by the Commissioner, and that the Commissioner be asked to prepare for this Board, at the earliest possible date, minimum standards for staffing and physical facilities, and a plan for regionalization of cardiac surgery units statewide, to assure availability and quality of care at the least possible cost to the consumer. Mr. Brach seconded the motion. [Emphasis in the original]
Mr. Westcott's motion was carried by a divided vote insofar as it denied the certificate of need, but all members of the Board, with one abstention, agreed that there was a need for guidelines and a "plan for regionalization of cardiac units statewide."
In its findings HCAB found that an annual volume of 200-300 cardiac surgery procedures are required to assure that such cardiac surgery facilities are effectively utilized; that of the nine hospitals in New Jersey which perform cardiac surgery only Newark Beth Israel Medical Center and Deborah Hospital (neither of which were in Area I) perform such procedures in the optimal quantitative range, and in St. Joseph's Planning Area I the two hospitals performing cardiac surgery, Passaic General Hospital and Jersey City Medical Center, respectively performed only 46 and 26 such procedures in the year 1975. It was on this basis that the HCAB found that such facilities were "underutilized." *222 The harm to be guarded against as a result of underutilization lies in the deterioration of surgical care which is threatened when skills in the use of the facilities are not regularly practiced.
We conclude that the fact that the cardiac surgical units at Passaic General Hospital and Jersey City Medical Center were underutilized does not of itself warrant denial of St. Joseph's application, for it may be that granting of that application might, considering the number of its catheterization procedures and referrals of approximately 275 cases for cardiac surgery a year serve to meet the needs of the area involved. Nor do we consider that St. Joseph's failure to adequately "consult" with other hospitals in its area justifies denial of its certificate of need, for we know of no regulation of the Department of Health, at the time of this application, which mandated such consultation or furnished guidelines for such coordination.
Despite those factors that favor St. Joseph's application we affirm the decision of the HCAB for the reason that its findings and conclusions, except as herein stated, are supported by sufficient credible evidence in the record and justify the denial of the certificate of need. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965); Nat'l Nephrology Foundation v. Dougherty, 138 N.J. Super. 470, 476 (App. Div. 1976). As we have said above, the legislative policy requires consideration of "area" needs in the establishment of health facilities. In speaking of that general legislative purpose this court has said:
The purpose of the state plan is to determine the needs of each region for various types of health care facilities covered by the statute and by comparison with available facilities make a determination concerning additional requirements for each region. [Merry Heart Nurs. & Conv. Home v. Dougherty, 131 N.J. Super. 412, 418 (App. Div. 1974); emphasis supplied]
It is true that at the time of St. Joseph's application there were no guidelines or regulations to carry into *223 effect the legislative policy of "area" or "regional" consideration in the granting of certificates of need. However, the fact that the Department of Health had not implemented that policy by regulations within its statutory power is no reason to support a grant of a certificate of need which would defy the expressed legislative policy.
In any event, the HCAB expressly recognized the need for the establishment of standards for cardiac surgery services and also, as stated in the Westcott motion, "a plan for regionalization of cardiac surgery units statewide." On May 5, 1977, during the pendency of this appeal, HCAB adopted "Standards and General Criteria for the Planning and Certification of Need of Regional Cardiac Surgical Centers."
We therefore address ourselves to the question as to whether these new regulations have any significance with respect to St. Joseph's application which was filed May 19, 1975. To this there are several relevant answers. First, since we have held above that HCAB's denial of the application on September 2, 1976, prior to the adoption of the new regulations, was supported by sufficient credible evidence in the record under the law then existing, we need not consider those regulations at all. Second, however, we must not be understood as being unaware of the function of the Department of Health as the agency charged by the Legislature with the regulation of health services. As such an agency it has the "ever continuing responsibility of the agency to administer the provisions of its governing statute in the public interest * * *." Cf. Lubliner v. Paterson Bd. of Alcoholic Bev. Control, 33 N.J. 428, 439 (1960) (emphasis supplied). There it was held that, in the context of Alcoholic Beverage Control hearings, and agency is free to alter any prior decision if it concludes that to do so is in the public interest. As Justice Jacobs said in Lubliner, citing a decision of the Third Circuit concerning the Federal Power Commission, Panhandle Eastern Pipeline Co. v. Federal Power Comm'n, 236 F.2d 289 (1956), the agency's function is to determine "present or future public convenience *224 or necessity with respect to the continuance or abandonment of natural gas service." Id. 33 N.J. at 440; emphasis supplied. Justice Jacobs also cited Churchill Tabernacle v. Federal Communications Com'n, 81 U.S. App. D.C. 411, 160 F.2d 244 (D.C. Cir.1947). Of the court in that case, he declared:
* * * it expressed the view that the Commission was empowered to reject an old policy, adopt a new one, and apply it to the renewal of a license which had been issued to permit the operation of a radio station; and it noted that this conclusion followed "from the statutory duty of the Commission to examine each application for renewal of license as an original proceeding and grant or refuse it in the public interest." See 160 F.2d at p. 246. [Id. 33 N.J. at 440]
Similar considerations apply here.
As said in Trap Rock Industries, Inc. v. Sagner, 133 N.J. Super. 99 (App. Div. 1975), aff'd 69 N.J. 599 (1976), subject to statutory restrictions an administrative agency, in appropriate circumstances, has
* * * the power to reassess or reconsider its actions in order to perform fully its responsibilities as a regulatory body. Ruvoldt v. Nolan, 63 N.J. 171, 183 (1973). In this sense the power to reconsider, to rehear and to revise determinations may be regarded as inherent in administrative agencies. [citing cases]. This power to reappraise and modify prior determinations may be invoked by administrative agencies to protect the public interest and thereby to serve the ends of essential justice. * * *. [133 N.J. Super. at 109]
The proposition that an administrative agency may pass regulations in the light of present and future requirements of the public interest in its field despite a prior determination to the contrary, was succinctly stated by Chief Justice Gummere in Rohrs v. Zabriskie, 102 N.J.L. 473 (Sup. Ct. 1926). There, after a building superintendent had denied a building permit for the erection of an apartment house under the existing zoning ordinance, the municipality amended it to prohibit erection of such a building unless it met more restrictive requirements, i.e., that it must be *225 fireproof. The owner contended that since the amendment was not in force at the time of its application, the restrictions in the amended ordinance could not be retroactively applied. Speaking for the Supreme Court the Chief Justice rejected the contention and said:
Assuming that the ground upon which the superintendent refused to issue the permit was unsubstantial and that the action of the board of adjustment was not justified under the statute, will this court, when confronted with an ordinance passed in the valid exercise of power conferred upon the municipality, disregard its existence and direct a permit to be granted to this relator to erect a building of the character described in her application, although its erection will be a threat to the public safety, merely for the reason that such ordinance was not passed until after the conclusion of the hearing before the board of adjustment and its action thereon. We have no doubt but that this question should be answered in the negative. Admitting that the ordinance does not have a retroactive effect, so far as buildings in the course of erection are concerned, it is clearly applicable where the process of construction has not yet been begun. [at 475; emphasis supplied]
Socony-Vacuum Oil Co., Inc. v. Mt. Holly Tp., 135 N.J.L. 112 (Sup. Ct. 1947), cites the foregoing language with approval and adds:
And just as a change in the law between a nisi prius and an appellate decision requires the appellate court to apply the changed law, so, by like token, a change of law pending an administrative hearing or act must be followed in relation, as here, to a permit for the doing of a future act. Otherwise the administrative body, here the building inspector whose acts are subject to appeal to or review by this court, would issue a permit contrary to the existing legislation. [at 118]
Thus, even if the HCAB had improperly denied St. Joseph's application, it was entirely within its power and responsibility as a continuing regulatory body, in the light of present and future considerations in the public interest, to adopt the 1977 "Regional" regulations. Of course, the power of an agency to modify its position must be exercised reasonably. Therefore the courts must consider the *226 effect of the modification on parties who have justifiably changed their position in reliance on prior agency determinations. Ruvoldt v. Nolan, supra at 63 N.J. 183-184. No prejudicial reliance is shown here. Accordingly, St. Joseph's may now, without prejudice, apply for a certificate of need for a cardiac surgery unit pursuant to those regulations.[2]

II
We find no merit in appellant's contention that the HCAB improperly used licensing standards in denying the certificate of need. R. 2:11-3(e)(1).
For the foregoing reasons the denial of appellant's application filed May 19, 1975 is affirmed.
NOTES
[1] At the time of the decision St. Joseph's was in Area I (then consisting of Hudson, Passaic, Bergen and Sussex Counties). We understand that the several areas have since been revised.
[2] We note that the 1977 regulations impose a moratorium on granting of such a certificate of need. We do not pass on the validity of the regulations, either favorably or unfavorably, for that issue is not before us. We assume that the "regions" to be established thereunder will be sufficiently defined so that an applicant may know the characteristics of the region in which it exists and consider such facts and circumstances which may justify grant of a certificate of need in that region.