IN THE MATTER OF THE 1982 FINAL RECONCILIATION ADJUSTMENT FOR JERSEY SHORE MEDICAL CENTER.

Superior Court of New Jersey
Appellate Division

Argued February 20, 1986—Decided March 18, 1986.

---

[3]The judgment shall make appropriate provision, of course, to assure that no double recovery is obtained by Foley or against Alpine.

82

Before Judges ANTELL, SHEBELL and MATTHEWS.

*Murray J. Klein* argued the cause for appellant (*Cohen, Shapiro, Polisher, Shiekman and Cohen,* attorneys; *Murray J. Klein,* on the brief).

*Charlotte Kitler,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Charlotte Kitler,* on the brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

This appeal by Jersey Shore Medical Center involves a challenge to the final reconciliation methodology utilized by the New Jersey Department of Health in recalculating the hospital's rates for the year 1982.

On January 26, 1982, the Commissioner of Health issued a proposed schedule of rates for Jersey Shore for the 1982 rate year. The hospital rejected these rates and pursuant to *N.J.A.C.* 8:31B–3.51(a)(2), submitted exceptions for appeal and review by the Hospital Rate Setting Commission (hereinafter "HRSC"). The HRSC approved several of the hospital's proposed adjustments, including a $1,447,214 increase to the direct patient care costs. These approvals were set forth in the HRSC's Final Decision and Rate Order dated August 8, 1984.

During the interim, the Department being in receipt of the hospital's actual 1982 experience began to conduct a final reconciliation of Jersey Shore's 1982 rates, pursuant to *N.J.A.C.* 8:31B–3.71. The methodology utilized in this process had been

previously approved for 1982 by the HRSC at a September 21, 1983, hearing. In June of 1984, the Department notified Jersey Shore of its final reconciliation adjustment for 1982, noting an overcollection of $2,770,635 including interest. In the direct patient care area, this resulted in the reduction of the previously-approved adjustment of $1,447,214 to $723,472. Jersey Shore objected to the Department's final reconciliation methodology and the resulting figures. After hearings on September 26, 1984 and November 7, 1984, the HRSC voted to accept the Department's recommendations and withheld the "overcollection" from the reimbursement funds payable to the hospital.

Final reconciliation is the process by which a hospital's actual experience in net revenue collection for a fiscal year is compared to the allowable net revenue of the preliminary cost base. It is the recalculation of rates in light of the inflationary factor for the year, the hospital's actual case mix and other adjustments. *N.J.A.C.* 8:31B–3.73. Because of the prospective nature of the rate-setting system, reconciliation is necessary to insure that the hospital's net revenue collection aligns with the HRSC-approved schedule of rates, thereby complying with the cost containment mandate of the Act. *N.J.A.C.* 8:31B–3.71(a); *N.J.A.C.* 8:31B–3.73(a); *see In re Monmouth Med. Center Rate Appeal,* 185 *N.J.Super.* 20, 35–36 (1982).

Certain automatic adjustments, such as the economic factor and HRSC-ordered changes, are made by the Department. *N.J.A.C.* 8:31B–3.72(a). Hospitals are required to submit reports of their actual experiences. The Department then computes any difference between the actual net revenue and allowable net revenue with interest and accordingly adjusts the hospital's schedule of rates for the next year. *N.J.A.C.* 8:31B–3.75(b)3 and 4. If the hospital's actual revenue exceeds allowable amounts, an "overcollection" is registered and is subtracted from the next year's rates. If hospital revenues are below the appropriate amounts, the "undercollection" is included as an addition to the upcoming rate schedule.

Jersey Shore first entered the new rate reimbursement system in 1982. The Department utilized the hospital's 1979 fiscal year as its cost base. The hospital showed efficiencies and was rewarded with incentives. Jersey Shore has historically been a low-cost hospital, but in recent years has experienced significant problems in the areas of personnel, services and physical plant. The hospital therefore aggressively pursued recruitment, quality improvement and construction of additional space.

Although the revised order under review reflected the adjustment in base year (1979) dollars, the document stated that the change was being made to the hospital's preliminary cost base. This misstatement to a large extent appears to have precipitated the instant appeal.

The Department's 1982 final reconciliation methodology was approved by the HRSC on September 21, 1983. It was basically the same methodology employed for the rate year 1980, for which a case study was published and distributed to hospitals.

Jersey Shore objects to the methodology by which the final 1982 direct care amounts were determined, claiming that it did not receive the full benefit of the previously-approved $1.4 million adjustment because that figure was screened against the statewide standard at the time of reconciliation. It maintains it was not made aware that this rescreening would be done and relied to its detriment on receiving the full amount. It points to the language of the Rate Order, which made the adjustment directly to the PCB, and argues that the meaning of this terminology was that the approved increases were to be directly added to the reimbursement schedule without any rescreening.

The Commission concedes it was not technically correct in its language in the 1984 Rate Order, but asserts that the actual intention of the HRSC in approving the 1982 rates for Jersey Shore is what should control.

Our function on appeal is to determine "whether the findings made could have been reached on sufficient credible evidence

present in the record considering the proofs as a whole," giving due regard to the agency's expertise. *Riverside General v. N.J. Hosp. Rate Setting Com'n*, 98 *N.J.* 458, 468 (1985); *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599 (1965).

The area of hospital rate setting is relatively new and complex. The Legislature has delegated a great amount of discretion to administrative experts and deference must be accorded to the agency's expertise and experience in the field. *Riverside General, supra,* 98 *N.J.* at 469; *In the Matter of the Schedule of Rates for Barnert Memorial Hospital,* 92 *N.J.* 31, 41 (1983).

Appellant asserts that the final reconciliation methodology is for all intent and purposes an administrative rule which was promulgated in violation of the Administrative Procedure Act (*N.J.S.A.* 52:14B–1 *et seq.*, as amended by *N.J.S.A.* 52:14F–1 *et seq.*) and its own enabling statute (*N.J.S.A.* 26:2H–1 *et seq.*). It contends rulemaking procedures have not been followed and that the HRSC is without statutory authority to enact this "rule."

 We do not view the approval of the Department's reconciliation methodology as rulemaking by the HRSC. Generally, an administrative rule is an agency statement of general applicability and continuing effect that interprets law or policy or describes the agency's requirements. *N.J.S.A.* 52:14B–2(e). If an agency's action or determination constitutes a rule, it must comply with the specific procedures of the Administrative Procedures Act. *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 334 (1984). Even if the agency is given statutory discretion, the manner in which this discretion is exercised may be governed by these procedural requirements if its action constitutes rule-making. *Id.* at 333–334.

*Metromedia* lists six relevant factors to assess whether agency action constitutes rule-making. 97 *N.J.* at 331–332. The fourth and fifth factors are pertinent to our inquiry. Rule making will be found in an agency determination where such:

... (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official or explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear past agency position on the identical subject matter ... [96 *N.J.* at 331].

Where the action is inferable from the enabling statute itself and does not reflect a new or changed position, it will not be held invalid for failure to meet rule-making procedural requirements. *See Airwork Serv. Div., etc. v. Director, Div. of Taxation,* 97 *N.J.* 290, 301 (1984).

*N.J.S.A.* 26:2H–4.1b specifically authorizes the HRSC to approve the PCB and appropriate schedules of rates. The schedule of rates is to be reasonable and sufficient to meet the revenue requirements of the PCB and "shall be adjusted ..., as appropriate, to reach the certified revenue base." *Id.* The certified revenue base is the PCB, as adjusted by the HRSC pursuant to regulations proposed by the Commissioner and approved by the Board to provide for the financial solvency of the hospital. *N.J.S.A.* 26:2H–21. "Preliminary cost base" is "that proportion of a hospital's current cost which may reasonably be required to be reimbursed ..." *N.J.S.A.* 26:2H–2k. The Commission has statutory authority to review various "adjustments" to the PCB, certified revenue base and schedule of rates. *N.J.S.A.* 26:2H–18.1b, c and d.

Further, our Supreme Court has determined that these standards expressed in the Act are sufficiently definite to guide the regulatory bodies in their exercise of delegated rate-review authority. *In re Hosp. Reimbursement Kessler Mem. Hosp.,* 78 *N.J.* 564, 580 (1979) (Handler, J., concurring); *Borland v. Bayonne Hospital,* 72 *N.J.* 152, 158 (1977), *cert.* den. 434 *U.S.* 817, 98 *S.Ct.* 56, 54 *L.Ed.*2d 73 (1977).

From these statutory provisions, it is clearly and directly inferable that the HRSC is empowered to pass upon proposed final reconciliation methodology as anticipated by the statutory enablement. A key component in the derivation of the PCB,

and subsequently the certified revenue base, is the current cost base, which reflects the hospital's actual experiences in a given Diagnosis Related Grouping for the base year. *N.J.A.C.* 8:31B–3.16; *N.J.A.C.* 8:31B–3.20.

The purpose of final reconciliation is to align the actual experiences with the prospectively-set revenue base to make up for any changes in actual cost experience not covered in the PCB and schedule of rates. Reconciliation determines whether a hospital has overcollected or undercollected reimbursable funds; changes are treated as adjustments to the next year's schedule of rates, *N.J.A.C.* 8:31B–3.75(b)3 and 4, which will again be determined from the PCB, which is in turn derived from the blending of standard (statewide) costs and the hospital's current cost base.

Costs are contained and a hospital's financial solvency is promoted by including a percentage of actual costs (current cost base) in the formula. *See N.J.S.A.* 26:2H–1. The system, through its incentive/disincentive mechanism, permits hospitals to gauge their efficiency in a given area or make managerial determinations as to whether to cut costs in a weak area or abandon the service. An appeals process is built-in to allow hospitals to seek adjusted increases to their preliminary cost base for a given rate year. *N.J.S.A.* 26:2H–18.1d; *N.J.A.C.* 8:31B–3.51 to –3.65.

Because the HRSC is empowered to consider and approve the preliminary cost base, the certified revenue base and the schedule of rates, it must necessarily be authorized to pass upon the final reconciliation methodology. The Commission has the inherent authority to take action consistent with its legislative mandates even where such action is not expressed in a regulatory provision or where strict compliance with the regulations would produce results inconsistent with these mandates in an individual case. *N.J.A.C.* 8:31B–3.64(a)–3.64(d). The methodology impacts upon the components of the rate setting system as it sets the stage for future yearly rates. Without the reconciliation step there would be no assessment of

actual experience. The statutory purposes would not be fully realized.

■ The Act requires that HRSC's determinations be made pursuant to rules and regulations adopted by the Commissioner with Board approval to the extent they are consistent with the legislation's purpose and intent. *N.J.S.A.* 26:2H–4.1b; *N.J.S.A.* 26:2H–18.1; *N.J.A.C.* 8:31B–3.64(a). The first regulation of the Chapter 83 Regulations states that: "... taken together the [regulations] establish the criteria against which the Rate Setting Commission can evaluate arguments before it." *N.J.A.C.* 8:31B–3.1(b). Any adjustments made by the HRSC to the schedule of rates are expressly made subject to the reconciliation methodology outlined in the regulations. *N.J.A.C.* 8:31B–3.52(c). The entire system is circular and revolves around the Commission. The Commission's reconciliation function is meant to be adjudicatory as case by case flexibility is required. *See N.J.A.C.* 8:31B–3.64(c).

■ The need of administrative agencies for flexibility in the form of action they deem best suited to promote the policies of the statutes they are charged with administering has been judicially recognized. *Matter of Controlled Cable Corp.*, 95 *N.J.* 473, 485 (1984); *In re Kallen*, 92 *N.J.* 14, 24–25 (1983). Considerable weight must be given to their construction of the statute, particularly in light of the technical issues involved. *Barnert Memorial, supra,* 92 *N.J.* at 41. The rate review process is in the nature of "quasi-legislative" determinations analogous to rate-making for regulated industries. *Id.; Kessler Memorial, supra,* 78 *N.J.* at 576–577. Since the agency is to be given broad deference in carrying out its legislative charge, the approval of a reconciliation methodology which is harmonious with that mandate must be upheld.

While Jersey Shore argues that it was deprived of a protected property right by virtue of the Department's methodology, we conclude reconciliation cannot be said to have confiscated those funds without due process of law.

In 1980 the Department's final reconciliation methodology for that rate year was issued and an example was given. Forms which the Department was using were distributed and were sufficient to alert hospitals that the adjusted costs would be treated as changes in the current cost base and then res-creened. Several hearings on the 1982 methodology were held before the HRSC where comments were given by hospitals and the New Jersey Hospital Association. The Department considered suggestions from hospital representatives and replied. Departmental analysts noted that the 1982 methodology involved the same process used in the 1980 reconciliation. As noted above, *N.J.A.C.* 8:31B–3.52(c) expressly states that any approved rate adjustment will be subject to the reconciliation process. The declared policy statements of the Act and Regulations impart notice that comparison and alignment of a hospital's own costs with the reasonable standard is necessary to effectuate the Act's goals. *See Riverside General, supra,* 98 *N.J.* at 462–463; *Cf. Kessler Memorial Hosp.,* 78 *N.J.* at 580–582 & nn. 4–6 ("reasonable cost" goal of Act achieved by rate-review program that provides mechanism for containing costs through prospective rate setting determined by comparison of costs of comparable providers and of hospital's own experience and efficiency). Thus, the affected hospitals had notice of the methodology and an opportunity to be heard on that issue.

We agree that Jersey Shore had cause to complain because the Rate Order states that the adjustments were to be made in base year dollars to the hospital's PCB. "Preliminary cost base" has an exact meaning in the framework of the system. Jersey Shore claimed that by virtue of the language used it anticipated receipt of 100 per cent of the adjustments since an increase in the PCB (the "end result" of the rate calculating process) would not have to be screened against standard state-wide costs as would adjustments made to the base year or current cost base. It stated it acted in reliance on those funds in hiring new employees and instituting programs. It argues

therefore that the exclusion of 50 per cent of the adjusted rates has worked to its detriment.

 Appellant's claims were however fully considered by the Commission. Because of the mistaken terminology and the uncertainty as to how the particular adjustments were to be made for Jersey Shore, the HRSC directed the hospital and Department to reexamine the rationale underlying the requested adjustments and the impact of the methodology. The HRSC indicated it would consider a special exception for Jersey Shore if it could show unique and severe harm. We note that in all appeals before the Commission the burden of proof is on the petitioning hospital. *N.J.S.A.* 26:2H–18.1d.

The matter was reconsidered at a hearing on November 7, 1984. Jersey Shore submitted a chart showing the total amounts of approved adjustments for direct patient care costs of the 82 hospitals which completed the 1982 final reconciliation. This chart revealed that nearly every hospital with HRSC-approved adjustments received approximately fifty percent of those adjustments after rescreening. The HRSC concluded that Jersey Shore had been treated the same as every other hospital and had in fact been given greater adjustments than all hospitals except one. Further, the Commission found no undue harm and voted to accept the Department's recommendation that no special exception be granted for Jersey Shore.

We find no merit to appellant's claim that the HRSC is estopped from reopening and "changing" its 1984 Rate Order on which the hospital has relied to its detriment.

*Res Judicata* is defined as:

A principle of law [that] bars a party from relitigating a second time what was previously fairly litigated and determined *finally*. The general requirements for the invocation of this principle are a final judgment by a court or tribunal of competent jurisdiction, *identity of issues,* parties and cause of action and thing sued for.

*City of Hackensack v. Winner,* 162 *N.J.Super.* 1, 27–28 (1978), mod. 82 *N.J.* 1 (1980) (emphasis added). While this principle is extended to administrative agencies, it is not always applicable

where such agencies are carrying out their mandated regulatory responsibilities. *See* 82 *N.J.* at 28–31. "In the absence of a legislative restriction, administrative agencies generally have the inherent power to reopen or to modify and rehear prior decisions." *In re Trantino Parole Application,* 89 *N.J.* 347, 364 (1982); *see Trap Rock Industries, Inc. v. Sagner,* 133 *N.J.Super.* 99, 109 (App.Div.1975), *aff'd* 69 *N.J.* 599 (1976). The only limitations are the considerations of reasonableness, fairness and good cause. *See Trantino,* 89 *N.J.* at 364; *Trap Rock Industries,* 133 *N.J.Super.* at 109–110.

Reliance is stressed by appellant as a prime reason for precluding the "modification." If it be a modification, the court must consider its effect on the parties who have relied on prior agency determinations. *Ruvoldt v. Nolan,* 63 *N.J.* 171, 183–184 (1973); *Saint Joseph's Hosp. and Med. Ctr. v. Finley,* 153 *N.J.Super.* 214, 225–226 (1977), *certif. den.* 75 *N.J.* 595 (1978). However, an agency charged with continuing responsibility to pass regulations in the light of present and future public policy requirements may do so despite a prior determination to the contrary so long as this power is exercised reasonably. *Rohrs v. Zabriskie,* 102 *N.J.L.* 473, 475 (Sup.Ct.1926); *Saint Joseph's,* 153 *N.J.Super.* at 224–225. Prejudicial reliance must be shown. 153 *N.J.Super.* at 226. As noted previously, every hospital was subjected to the same rescreening of adjusted fees. Jersey Shore offers no evidence that the language of the Rate Order approving its adjustments was different from other orders.

In New Jersey, reconsideration of issues is precluded in later actions only when they have been "distinctly put in issue," "actually litigated" and "directly determined" by a prior final judgment. *See Van Dissel v. Jersey Cent. Power & Light,* 194 *N.J.Super.* 108, 120–121 (1984), *certif. den.* 99 *N.J.* 186 (1984); *New Jersey—Philadelphia, etc. v. N.J. State Board,* 654 *F.*2d 868, 876 (3d Cir.1981); *City of Plainfield v. P.S.E. & G.,* 82 *N.J.* 245, 257–258 (1980). What was put into issue and determined by the Rate Order was the adjustment to

prospective rates requested by Jersey Shore. No determination of the final reconciliation methodology or of its application to the adjustment was made at that time simply because the process had not yet reached that phase. The adjusted schedule of rates was still subject to reconciliation as required by *N.J. A.C.* 8:31B–3.52(c). HRSC had good cause to "reopen" its decision to make "corrections" harmonious with the policies of the Act.

In summary, Jersey Shore was historically an efficiently-run hospital in comparison to its peers; its base year costs were markedly lower. When management sought to increase its cost base it thereby augmented the rate schedule within which it had to work and through an appeal received substantial adjustments. Because its cost base and rate schedule had been increased, it "lost" efficiency when compared with the norm and was brought more towards the State standard. Thus, its incentive reward was reduced because of the increases it had requested. This does not mean it was not reasonably reimbursed; it merely lost a portion of its revenue-over-cost margin. It gained an increased base within which it could work. We find no legally recognizable "loss."

We affirm.