IN RE THE AMENDMENT OF N.J.A.C. 8:31B–3.31 AND N.J.A.C. 8:31B–3.51 BY THE STATE OF NEW JERSEY COMMISSIONER OF HEALTH AND THE STATE HEALTH CARE ADMINISTRATION BOARD.

IN RE THE AMENDMENT OF N.J.A.C. 8:31B–3.31 BY THE STATE OF NEW JERSEY COMMISSIONER OF HEALTH AND THE HEALTH CARE ADMINISTRATION BOARD.

Superior Court of New Jersey
Appellate Division

Argued June 14, 1988—Decided September 12, 1988.

Before Judges SHEBELL, GAYNOR and A.M. STEIN.

*Murray J. Klein* argued the cause for appellant Warren Hospital (*Cohen, Shapiro, Polisher, Shiekman and Cohen,*

attorneys; *Loretta Grennon* and *Murray J. Klein,* on the brief and reply brief).

*Eileen O'Donnell,* Deputy Attorney General, argued the cause for respondent Department of Health (*W. Cary Edwards,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Eileen O'Donnell,* on the brief and letter reply brief).

The opinion of the court was delivered by

ARNOLD M. STEIN, J.S.C. (temporarily assigned).

In these consolidated appeals, appellant Warren Hospital (Warren) challenges the validity of amendments to certain rate reimbursement regulations promulgated by respondent Department of Health (DOH or Department) through the Health Care Administration Board (HCAB).

On April 21, 1986, HCAB promulgated amendments to *N.J.A. C.* 8:31B–3.31 and 3.51, and on July 7, 1986, adopted an additional amendment to section 3.31.

On October 5, 1987, further amendments to 3.31 were adopted by HCAB. Warren filed a notice of appeal from these amendments on November 17, 1987. A motion to consolidate this appeal with those previously docketed was granted on March 28, 1988.

Warren contends, *inter alia,* that these amendments are invalid because the appeal mechanism set forth therein conflicts with the intent of the enabling statute, and because they are arbitrary and capricious.

We reverse because the appeal procedure conflicts with the statutory right of appeal afforded to hospitals pursuant to *N.J.S.A.* 26:2H–18.1 of the Health Care Facilities Act. *N.J.S.A.* 26:2H–1 *et seq.* Because we rule the amendments invalid on this ground, we do not reach the substantive question of whether they are arbitrary.

The HCAB, established by *N.J.S.A.* 26:2H–4, acts in conjunction with the State Commissioner of Health to "adopt and amend rules and regulations in accordance with the Administrative Procedure Act ... to effectuate the provisions and purpose of this act, including but not limited to: ... (2) certification by the department of schedules of rates, payments, reimbursement, grants and other charges for health care services...." *N.J.S.A.* 26:2H–5b.

Pursuant to this legislative authority, the Department and HCAB promulgated *N.J.A.C.* 8:31B–3.1 *et seq., Procedural and Methodological Regulations.* This rate-setting system is designed to set a prospective rate of treatment, in advance of actual treatment. The rate is related to the hospital resources consumed in treating particular illnesses, categorized as Diagnosis Related Groups (DRG). *N.J.A.C.* 8:31B–5.1 *et seq.* The current cost base for an institution includes both direct and indirect patient care costs. Direct patient care costs include salaries and fringe benefits for nurses, dieticians and other non-physicians engaged in the direct delivery of patient care. *N.J.A.C.* 8:31B–3.21; *Riverside General v. N.J. Hosp. Rate Setting Com'n,* 98 *N.J.* 458, 462 (1985). Indirect services include education, research, administrative, utilities and general services. *See N.J.A.C.* 8:31B–3.24; *Riverside General,* 98 *N.J.* at 462. Costs for residency programs are classified as "indirect." *N.J.A.C.* 8:31B–3.24(a).

Hospitals are classified in "peer groups" as either major teaching, minor teaching, or non-teaching, with each category specifying the criteria the hospital must meet. *N.J.A.C.* 8:31B–3.22(b). The hospitals within each peer group submit various data on costs of operation which the Department analyzes to develop a standard for each group's reasonable operating costs. *N.J.A.C.* 8:31B–2.5. The Department uses the cost data it collects in one year to establish a base year (*N.J.A.C.* 8:31B–3.-16), which is then utilized to calculate prospectively the reimbursement rates for successive years. Adjustments are made each year for various economic factors. The resulting amount

represents the "preliminary cost base" for each hospital. *N.J. A.C.* 8:31B-3.7. The Commissioner also transmits to the hospital a proposed schedule of rates which is designed to produce sufficient revenue to correspond to the cost base. *Ibid.* Authority is given to the Hospital Rate Setting Commission (HRSC), pursuant to *N.J.S.A.* 26:2H-4.1, to either approve or adjust the Commissioner's proposed preliminary cost base and Schedule of Rates for each hospital.

Hospitals are given the right to appeal to the HRSC, "pursuant to regulations proposed by the commissioner and approved by the [HCAB]." *N.J.S.A.* 26:2H-18.1d. According to *N.J.A.C.* 8:31B-3.51, hospitals have 45 days from receipt of the Proposed Schedule of Rates to notify the Commissioner and the HRSC of the course of action the hospital chooses to take, which must fit into one of the following categories. The hospital may:

1.  Accept the Schedule of Rates, contingent upon approval by HRSC. *N.J.S.A.* 8:31B-3.51(b)1.

Under the "accept" option, the hospital is only allowed to appeal limited issues, and it is "rewarded" with an additional 1% of all direct patient care cost added to its rates.

2.  Conditionally Accept, *N.J.A.C.* 8:31B-3.51(b)2, contingent upon HRSC approval.

Under this option, the scope of appealable issues is greatly widened, and the 1% bonus is given up.

3.  Not Accept, *N.J.A.C.* 8:31B-3.51(b)3.

If a hospital chooses to "not accept" the proposed Schedule of Rates, it must submit exceptions within 60 days of receipt of the Schedule and it "will be issued a revised Proposed Schedule of Rates based upon the efficiency standard and will be subject to review of the entire Preliminary Cost Base, and thus at risk for all operating costs and revenue adjustments." The 1%

"bonus" is also removed. Any issue the hospital chooses may be raised on this type of appeal.

Thus, a hospital electing the "not accept" option will have its actual operating costs calculated on the "efficiency" standard, which is the median cost per DRG; it is used "to identify presumptively excess cost." *N.J.A.C.* 8:31B–3.5b. Those hospitals choosing the accept or conditionally accept option have their costs calculated on the "Incentive Standard," which is the *mean* cost per DRG. *Ibid.* Inevitably, the efficiency standard results in significant lowering of reimbursement rates, and is applied even if the hospital is successful in its appeal.

Appellant Warren is a 285–bed general acute care non-profit hospital located in Phillipsburg, Warren County.[1] In 1980, the hospital established a family practice residency program, with the full approval and financial support of both the DOH and the Department of Higher Education.

Warren's family practice program was created in an effort to respond to the need for additional family practice physicians in the geographically isolated areas of Warren and Sussex Counties. The program was a coordinated effort between Warren and Overlook Hospital in Summit, New Jersey. When it began, Overlook Hospital provided the training for the first year residents, and Warren Hospital provided the training for second and third year residents. The long-range plan was that Warren would train residents at all three levels and gradually expand the program to reach the number of residents in each year for optimal educational benefits and cost efficiency.

Between 1980 and 1985, the Department correctly classified Warren, for rate reimbursement purposes, as a non-teaching hospital. Although Warren was engaged in teaching functions during these years, its family practice program was not large

---

[1]The facts submitted by Warren are largely undisputed by the State, which deems these contentions "irrelevant" to the validity of these amended regulations.

enough to meet the Department's criteria for minor or major teaching hospitals.

In 1986, Warren's program increased to over fifteen residents. For the first time, it therefore qualified as a minor teaching hospital, *N.J.A.C.* 8:31b–3.22(b)3, and was eligible for the higher reimbursement rates allowed teaching facilities.

Warren brings this appeal because the Department refuses to classify Warren as a minor teaching hospital and to calculate its reimbursement accordingly. Instead, the Department continues to classify Warren as a non-teaching hospital and, by doing so, claims Warren, it is substantially under-reimbursed.

We agree with Warren's contention that the amendments promulgated by DOH are invalid because they conflict with the statutory provision granting hospitals the right to appeal the sufficiency of their reimbursement rates. *N.J.S.A.* 26:2H–18.1.

The amendment to 3.51 effectively limits a hospital's right to appeal its residency reimbursement rates to the "not accept" option, described above. According to *N.J.S.A.* 26:2H–18.1a, "the *Commission shall* make the determinations and *hear appeals* provided for in this act in a timely manner pursuant to regulations proposed by the commissioner and approved by the board." (Emphasis supplied).

These regulatory amendments subvert the legislative intent to provide an effective avenue of appeal. If the increase in the number of residents is deemed a "transfer," Warren is precluded from appealing its teaching status. Even though it would otherwise qualify as a "minor teaching" hospital, the amendment to 3.31 states that an "addition of resident positions *by transfer* may not result in a change to a higher teaching status peer group." (emphasis supplied). *N.J.A.C.* 8:31B–3.31(c). Thus, while under this amendment a hospital may, by "conditionally accepting" or "not accepting," appeal for additional resident positions by transfer, it will not receive any concomitant benefit if the transfer is granted, especially when the

additional positions would have previously resulted in a change to a higher peer group.

If the additional slots are adjudged to be the result of an "expansion," then a hospital is permitted to appeal for the costs of expansion, including, apparently, a change to a higher peer group, but only if the appeal is taken under the "not accept" option. *N.J.A.C.* 8:31B–3.51(b)4. It would not be realistic for any hospital to select the "not accept" option, because the losses associated with that choice will never be offset by a successful appeal.

The major flaw of these amendments is that a hospital stands to be severely penalized for utilizing a right of appeal provided by statute. They do not permit a hospital to appeal without the exacting of severe financial consequences. By subverting the appeals process, these amendments frustrate the aims of the Health Care Facilities Planning Act, from which DOH and HRSC receive their authority to promulgate regulations. *Cf. St. Barnabas Med. Ctr. v. New Jersey H.R.S.C.*, 214 *N.J.Super.* 599, 606 (App.Div.1987) (HRSC erred in refusing to allow hospital to recalculate number of full-time equivalent residents and residents' salaries based on accepted standard, because "[i]t is simply not within the contemplation of the Act to penalize an efficient hospital by applying a disincentive where one is not warranted.")

We set aside as invalid the amendments of April 21, 1986 to *N.J.A.C.* 8:31B–3.51(b)(4). We do not decide the question of the arbitrariness of the amendments to *N.J.A.C.* 8:31B–3.31 because HRSC has the power to consider each hospital's eligibility on a case-by-case basis and modify actions taken in strict accordance with these regulations when such actions would produce unjust results for individual institutions. *N.J.A.C.* 8:31B–3.64. *See 1982 Final Recon. Adj. for Jersey Shore Med. Ctr.*, 209 *N.J.Super.* 79, 88–89 (App.Div.1986).

We do not retain jurisdiction.