IN THE MATTER OF 1983 FINAL RECONCILIATION ADJUST-
MENTS OF GREENVILLE HOSPITAL, GREATER FREEHOLD
AREA HOSPITAL, MERCER MEDICAL CENTER, MONMOUTH
MEDICAL CENTER, PASSAIC GENERAL HOSPITAL, WEST
JERSEY HEALTH SYSTEM AND ZURBURG MEMORIAL HOS-
PITAL.

Superior Court of New Jersey
Appellate Division

Argued December 16, 1986—Decided January 20, 1987.

Before Judges O'BRIEN and LANDAU.

*Eugene P. Provost,* Assistant Public Advocate, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney; *Eugene P. Provost,* on the brief).

*Eileen O'Donnell,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney; *Michael R. Clancy,* Deputy Attorney General, of counsel; *Charlotte Kitler,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LANDAU, J.S.C. (temporarily assigned).

This is an appeal pursuant to *R.* 2:2–3(a)(2) by the Division of Rate Counsel of the Public Advocate (Advocate) from the approval in December 1985 by the New Jersey Hospital Rate Setting Commission (Commission) of certain "final reconciliation adjustments" for 1983 affecting 7 hospitals, made as part of a comprehensive statutory and regulatory scheme developed, "in order to provide for the protection and promotion of the health of the inhabitants of the State, promote the financial

solvency of hospitals and similar health care facilities and contain the rising cost of health care services...." (*N.J.S.A.* 26:2H–1)

The Advocate has asserted that "the Commission's decision to approve the 1983 Final Reconciliation Adjustment is unlawful because the Commission failed to proceed upon an evidential foundation and did not reveal the grounds for its decision." In addition, the Advocate suggests that it is entitled to explore the causes of the schedule of rates variances including variations between projected and actual patient volume and case-mix. The Advocate also argues that if this aspect of the final reconciliation adjustment procedure is viewed as automatic, the Commission's duty to implement the "necessary and appropriate" aspect of the volume and case-mix (*N.J.S.A.* 26:2H–18.1b) is not fulfilled. We disagree and affirm.

The current process involved in implementing these statutory objectives was recently summarized by our Supreme Court:

> Stated simply, the Amendment establishes a three-step system for the setting of hospital rates. First, the Commissioner of Health proposes for each hospital a preliminary cost base [1] —that proportion of its expenses that the Commissioner determines deserves to be covered by the hospital's charges to its patients. *N.J.S.A.* 26:2H–2(k). The preliminary cost base is annually increased by an economic factor to account for inflation. *N.J.S.A.* 26:2H–18.1(b). Then, the Commissioner of Health proposes for each hospital a "certified revenue base" [2]

---

[1] *N.J.S.A.* 26:2H–2(k):

k. "Preliminary cost base" means that proportion of a hospital's current cost which may reasonably be required to be reimbursed to a properly utilized hospital for the efficient and effective delivery of appropriate and necessary health care services of high quality required by such hospital's mix of patients. The preliminary cost base initially may include costs identified by the commissioner and approved or adjusted by the commission as being in excess of that proportion of a hospital's current costs identified above, which excess costs shall be eliminated in a timely and reasonable manner prior to certification of the revenue base. The preliminary cost base shall be established in accordance with regulations proposed by the commissioner and approved by the board.

[2] *N.J.S.A.* 26:2H–2(1):

—an amount determined by the Commissioner that must be reimbursed to the hospital. *N.J.S.A.* 26:2H–2(1). Finally the hospital's rates are approved by the Commission, based on the hospital's certified revenue base figure. *N.J.S.A.* 26:2H–4.1(b). The preliminary cost base, the certified revenue base, and the schedule of rates are determined in accordance with regulations adopted by the Commissioner of Health with the approval of the Health Care Administrative Board. *N.J.S.A.* 26:2H–2(k), –18(b). However, they must ultimately be approved by the Commission. *N.J.S.A.* 26:2H–4.1(b).

· · · · · · · ·

...A key feature of the 1978 Amendment was the declared public policy of the Act to contain hospital costs. The method used to achieve this containment objective also sought to increase the efficiency of the hospital's operations through a system of 'incentives' and 'disincentives' set forth in the regulations. Under this method, an individual hospital's costs in particular functions are compared to those of other hospitals operating within a certain area. Both a hospital's direct and indirect patient care costs are screened against a standard developed for that hospital's peer group.

The disincentives and incentives in the area of direct patient care cost are not arrived at by an analysis of the costs of particular items or services. Rather, the incentives and disincentives are determined by comparing a particular hospital's historic or base year costs for each separate Diagnosis Related Group (DRG) [3] to the standard by peer group for each DRG. See *N.J.A.C.* 8:31B–3.23. The regulations are designed to establish a prospective rate of reimbursement related to the measure of hospital resources consumed for each particular illness and identified as a price per case by DRG. *N.J.A.C.* 8:31B–5.1.

*Riverside General v. N.J. Hosp. Rate Setting Comm.*, 98 *N.J.* 458, 463 (1985).

At the end of the rate year, hospitals are required to report data on their actual patient volume and case mix as well as the amount of revenue collected during the rate year, for use in final reconciliation. (*N.J.A.C.* 8:31B–3.73(a)) Final reconciliation is a process of aligning and comparing the actual revenue

---

1. "Certified revenue base" means the preliminary cost base adjusted by the commission, as appropriate and necessary pursuant to regulations proposed by the commissioner and approved by the board, to provide for the financial solvency of a hospital which is properly utilized and which delivers, effectively and efficiently, appropriate and necessary health care services of a high quality required by its mix of patients.

3Diagnosis Related Groups (DRG) are categories of hospital inpatients with similar clinical characteristics, such as diagnosed condition, age, sex, etc. Patients in each DRG can be expected to consume similar amounts of hospital resources. *N.J.A.C.* 8:31B–5.1.

collected by the hospital with the revenue allowable under the approved schedule. *See In re 1982 Final Reconciliation Adjustment for Jersey Shore Med. Center,* 209 *N.J.Super.* 79, 84 (App.Div.1986). It involves a recalculation of the projected economic factor using the actual inflationary factor for the rate year, and a redetermination of the rates in light of the actual volume and case-mix of the hospital, together with any adjustments previously granted through administrative appeal. (*N.J. A.C.* 8:31B–3.71 to *N.J.A.C.* 8:31B3.73)

Besides the standards set forth in the regulations, a specific explanation of the various kinds of calculations as well as the forms used in the final reconciliation is provided by a methodology manual each year. The manual explaining the final reconciliation methodology for the 1983 rate year was approved by the Commission in October 1984, after the document had been circulated for comments from the hospital industry and other interested persons.

Under the methodology, the amount of the allowable approved net revenue for the rate year, is compared to the actual net revenue collected by the hospital. Any variance in the amounts is computed with interest. (*N.J.A.C.* 8:31B–3.75(b)(4)) If the comparison shows that the hospital's actual net revenue exceeds the final calculated amount (an "overcollection"), the excess, including the computed interest, is subtracted from the next year's rates; if the amount of the actual revenue collected is below the appropriate amount (an "undercollection"), the amount of the variance, together with interest, becomes an adjustment to the next year's preliminary cost base or certified revenue base. *N.J.A.C.* 8.31B–3.75.

▮ The Advocate contends that treating the final reconciliation adjustments as "automatic" violates the Commission's duty to insure that the adjustments to the schedule of rates are "necessary and appropriate." See, *e.g., N.J.S.A.* 26:2H–18.1b. We disagree because the argument ignores the substantial provisions in the regulatory scheme which are specifically ad-

dressed to the method chosen to assure necessity and propriety. See *N.J.A.C.* 8:31B–3.76 to *N.J.A.C.* 8:31B–3.87. These regulations are framed consistently with the underlying reliance upon the concept of diagnosis related groups, and strictly regulated deviations from those groups, as the means of complying with the requirements that payment be made only for appropriate and necessary care.

■ In this complex area where the Legislature has delegated a great amount of discretion to the administrative experts, deference must be accorded to the administrative agency's expertise and experience in choosing how to address its statutory charge. In re *Barnert Memorial Hospital Rates*, 92 *N.J.* 31, 91 (1983).

We believe that reliance upon *Jersey Shore*, 209 *N.J.Super.* at 89, is misplaced. That case involved a challenge by a hospital to the *methodology* of a reconciliation. By contrast, here, the methodology had already been adopted with opportunity for comment, and as contemplated by *N.J.S.A.* 26:2A–18.-1b, the process was recognized both by that statute and by the implementing regulation, (*N.J.A.C.* 8:31b–3.71a), as one of the "automatic" adjustments to be made under the statute. The Advocate incorrectly argues that the automatic nature of the adjustment is a position urged by the Attorney General. Rather, "automatic" is the statutory and regulatory characterization of this step in the rate process. *N.J.S.A.* 26:2H–18.1(b).

■ The Advocate now seeks a reversal and remand of the approvals by the Commission of the final reconciliation adjustments under the uncontested methodology. It urges that the Commission must make findings and a determination as to its reasons for approving the reconciliation. We are satisfied that the Commission has already determined that the adjustments are in accordance with the methodology, and are accurate. Neither of these facts has been contested. This fulfills the Commission's responsibility for approval at this stage. See, *Bergen Pines Hospital v. Dept. of Human Services*, 96 *N.J.*

456, 478 (1984); *East Windsor Reg'l Bd. of Ed. v. State Bd. of Ed.*, 172 *N.J.Super.* 547, 552–553 (App.Div.1980).

It is undisputed that our decision will not change the substantive result in this case, inasmuch as the 12–month period provided by *N.J.A.C.* 8:31B–3.75(a) for the subject hospitals to make up their schedule of rates variances by increases in their subsequent 12–month charges to users, has expired. The Advocate does not seek any refunds. Thus, the only tangible effect of a remand would be to focus attention on the need for a point in the rate-setting scheme when inquiry can be made by the Division of Rate Counsel as to reasons for large rates variances.

We do not mean to foreclose such opportunity. We decline, however, to order an exercise in futility by remanding this matter for hearing, where the adjustments were automatic pursuant to an approved methodology, and the data was uncontested. The regulatory scheme contains its own methods for rewarding the efficient and penalizing the inefficient. See, *Riverside*, 98 *N.J.* at 463, 464. A history of unreliable forecasts, or requests for explanations thereof can readily be made part of the consideration of preliminary cost base and certified revenue base for any given institution.

Indeed, the Attorney General states in Formal Opinion No. 3, 1976, "that the rate setting process furnishes a proper occasion for involvement by the Division of Rate Counsel." Although the statute has been amended since that opinion was rendered, it is still substantially accurate in stating with respect to reimbursement rates, that, "this rate is later adjusted, after the end of the year, based on actual costs of services provided. *The major assessment of the reasonableness of a hospital's rate request in relation to the elements of cost, however, is reflected in the setting of the interim administrative payment rate rather than in the final rate.*" Formal Opinion No. 3, at 146. (Emphasis supplied)

██ We suggest that the appropriate time for participation by the Division of Rate Counsel is during the preliminary cost base proceeding when the prospective rates and submissions can be scrutinized in light of previous schedule of rates variances results, and, as well, by comparing the percent of such variances to those of the entire group of hospitals participating. In this way, the Advocate may use its power to employ experts, if it so chooses, (*N.J.S.A.* 52:27E–17, 19) and avail itself of the clearly expressed opportunity for its Division of Rate Counsel to examine reports prior to rate proceedings. This will also serve the statutory goal of cost containment (*N.J.S.A.* 26:2H–1; *In re Monmouth Medical Center Rate Appeal,* 185 *N.J.Super.* 20 (App.Div.1982)) and the policy goal of avoidance of multiple lawsuits.

It is clear to us that the Commission does not dispute the importance of raising questions respecting the cause of abnormal variances between the projected and actual figures generated in any hospital. Rather, the concern is where and when it is most appropriate that the Advocate raise these questions or request or propose answers thereto.

Perhaps the solution is already inherent in the authorities previously mentioned. *N.J.S.A.* 26:2H–18.1c and 1d each specifically refer to the participation of the Advocate, while omitting any reference to the Advocate's participation in these *N.J.S.A.* 26:2H–18.1b proceedings. And, as previously observed, the Attorney General opined in Formal Opinion No. 3, 1976, under the pre-amendment legislation, not only that the Division of Rate Counsel may participate in Hospital Rate Setting proceedings, but that the crucial time in such proceedings is when the rates are preliminarily set.

This makes good sense because the Commission and the Advocate will by then have the year's actual experience of all 91 hospitals for comparative purposes. The Commission can then participate meaningfully in a process where an appellant, including the Division of Rate Counsel, can explore reasons for

action, and receive articulated determinations thereon. See, *Riverside*, 98 *N.J.* at 468.

In sum, in the absence of any attack on the methodology itself, or on the accuracy of the components therein, we believe that the Commission's role in the regulatory and statutory scheme has been properly fulfilled by the approval of the reconciliation adjustments here under attack. The reasons for the Board's action were adequately expressed, when considered in that framework. The desired opportunity for inquiry should properly be made, upon appropriate request, during consideration of the preliminary cost base. We express no view on the nature of the proceeding required.

Affirmed.