577 A.2d 164

ALEXIAN BROTHERS HOSPITAL, CLARA MAASS MEDICAL CEN-
TER, COLUMBUS HOSPITAL, EAST ORANGE GENERAL HOS-
PITAL, ELIZABETH GENERAL MEDICAL CENTER, THE HOS-
PITAL CENTER AT ORANGE, ST. ELIZABETH HOSPITAL,
APPELLANTS, v. STATE OF NEW JERSEY, DEPARTMENT OF
HEALTH, HOSPITAL RATE SETTING COMMISSION, RESPON-
DENTS.

Superior Court of New Jersey
Appellate Division

Submitted October 24, 1989—Decided December 8, 1989.

Before Judges PRESSLER and LANDAU.

*Cohen, Shapiro, Polisher, Shiekman & Cohen,* attorneys for appellants (*Murray J. Klein* and *Ivan J. Punchatz* on the brief).

*Peter N. Perretti, Jr.,* Attorney General, attorney for respondent (*Mary C. Jacobson,* Deputy Attorney General, of counsel; *Eileen O'Donnell,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal by Alexian Brothers Hospital, Clara Maass Medical Center, Columbus Hospital, East Orange General Hospital, Elizabeth General Medical Center, The Hospital Center at Orange, and St. Elizabeth Hospital (Hospitals) from a final

decision of the Hospital Rate Setting Commission (the Commission) dated December 9, 1988, characterized by the hospitals as one in which the Commission declined to require the New Jersey Department of Health to correct an error affecting the equalization factor used in development of preliminary cost bases by each of these hospitals for 1984 through 1986.[1] The result of the Department's failure to apply its own Labor Market Area regulations, *N.J.A.C.* 8:31B–3.22(c), (d), it is urged, significantly reduced the level of reimbursement to which the hospitals were entitled during those rate years and also impacted upon their incentive/disincentive performance.

Hospitals seek to have this determination reversed as legally erroneous on the merits, and also as violative of the rule making requirements of the Administrative Procedure Act.

The Department of Health and the Commission say that this application is merely an untimely request to reopen and modify many past decisions, and that it was a reasonable exercise of discretion to decline to reopen years 1984–86 after so long a period of time, particularly as the door was left open for further application upon a showing of egregious harm.[2]

■ The statutory setting in which the Commission functions is the Health Care Facilities Planning Act. *N.J.S.A.* 26:2H–1 to 26:2H–26. A comprehensive discussion of its operation under the statutory scheme is contained in *Riverside General v. N.J. Hosp. Rate Setting Comm'n*, 98 *N.J.* 458, 487 *A.*2d 714 (1985). *See also In re Barnert Memorial Hospital Rates*, 92 *N.J.* 31, 455 *A.*2d 469 (1983). In general the Commission is required to

---

[1]The decision did correct the schedule of rates for rate year 1987 and arguably permitted the hospitals to appeal for relief for the 1984–86 years if they could demonstrate egregious financial harm.

[2]Although mentioned at the hearing, the formal resolution does not unambiguously so provide. However, the Commission apparently interprets its decision to provide for relief for egregious harm caused by the ruling, attributable to those years.

establish rates of reimbursement for hospitals, subject to regulations adopted by the Department, with the approval of a statutorily created Health Care Administration Board. The Commission must provide for a schedule of rates which is both "reasonable" and sufficient to meet the revenue requirements of what is known as the "preliminary cost base," defined as:

> [T]hat proportion of a hospital's current cost which may reasonably be required to be reimbursed to a properly utilized hospital for the efficient and effective delivery of appropriate and necessary health care services of high quality required by such hospital's mix of patients. The preliminary cost base initially may include costs identified by the commissioner and approved or adjusted by the commission as being in excess of that proportion of a hospital's current costs identified above, which excess costs shall be eliminated in a timely and reasonable manner prior to certification of the revenue base. The preliminary cost base shall be established in accordance with regulations proposed by the commissioner and approved by the board.

*N.J.S.A.* 26:2H-2(k).

*N.J.A.C.* 8:31B-3.1 to 8:31B-3.87 comprise the regulations established for computation of the preliminary cost base, building (for the years in question) upon base year 1982, with economic adjustments including application of a labor equalization factor, *see N.J.A.C.* 8:31B-3.22(c), (d), to direct and indirect patient care cost.

The labor equalization factor is designed to make more fair the process of cost efficiency comparisons among hospitals by geographically grouping them into eleven Labor Market Areas. These Labor Market Areas are enumerated in *N.J.A.C.* 8:31B-3.22(d)(2) and (3). A further refinement enables comparison of a major teaching hospital with a major teaching hospital peer, and similar comparisons among minor teaching and non-teaching hospital peers. *See N.J.A.C.* 8:31B-3.22(b). Costs for direct or indirect patient care which are higher than the standard developed are excluded from the costs allowed to the extent of deviations as "disincentives," while a hospital which generates lower than standard costs benefits from receipt of "incentives" up to the standard. After certain other adjustments, the resulting figures constitute for each hospital the "preliminary cost base" which forms the basis for the rate

schedule submitted to the Commission for its approval. The Commission is empowered to approve and adjust the cost base as well as the schedule of rates.

*N.J.A.C.* 8:31B–3.51(a) and (b) provide an opportunity for hospitals to challenge perceived calculation errors in a rate schedule, or to take exception to items in a rate schedule within set time limits, subject also to limitations on the extent to which one may both accept the rate schedule and challenge portions thereof. If the exceptions are not resolved by the Department, there is an appeal process to the Commission which is circumscribed by regulatory time limits for both appeal and decision. *See N.J.A.C.* 8:31B–3.63. The rate year is not entirely closed following determination of appeals on a rate schedule or cost base, as there is a "final reconciliation" process, *N.J.A.C.* 8:31B–3.71, based on actual rather than predicted experience. We considered this process in *Matter of 1983 Final Reconciliation*, 214 *N.J.Super.* 607, 520 *A.*2d 809 (App.Div.1987). There are also later audit procedures, which contemplate retroactive adjustments.

In 1987, when the Department acknowledges that it became aware of the labor equalization factor error, the record discloses that at least some 1984 rates had not been subject to final reconciliation. Even in December 1988, when the Commission decision was rendered, the 1985 final reconciliation had not yet been completed. Moreover, *N.J.A.C.* 8:31B–3.17(b) appears to contemplate correction of discrepancies exceeding $50,000 or one percent of the hospital's total gross revenue even after final reconciliation.

It is not disputed, based on requests made by some of the present appellants in 1987, that the Commission formally recognized in June 1988 the existence of an error in the 1984 to 1987 reimbursement rates, resulting from misassignment of eight Newark area inner-city hospitals to the "Newark Suburban Labor Market Area." The Department of Health and the Commission concede that "the impact of this error has been to

under-reimburse the misplaced hospitals and to over-reimburse the remainder of the Newark Suburban hospitals and inner-city hospitals."

The Department recommended to the Commission that were a retroactive correction to be made, it would have to be made applicable to both overcompensated hospitals as well as under-compensated hospitals, particularly as the insuring payers could not afford a decision which provided only for increased payments to the negatively affected hospitals without collecting refunds from the overcompensated hospitals. In consequence, the Department further recommended that the corrections should be made prospectively only, presumably to avoid confronting the problem of how to collect overpayments from some hospitals retroactively. This recommendation also avoided the possibility that payers, like financially troubled Blue Cross/Blue Shield, would have to make up for underpayments to the appellants without being repaid by the overcompensated hospitals.

The Department offered only two alternatives, either to correct the rates prospectively or retroactively to the first instance of error. One of the arguments made by the Department in support of prospective-only correction was partially based on its own perpetuation of the error by approving at least some final reconciliations for the subject years although it knew, or at least should have been aware, of the problem as early as 1986 when a correction was made by United Hospitals. An affidavit of record, submitted by Philip Besler, an expert in hospital reimbursement under the New Jersey statute, opined that even a "minimally competent investigation" into the United Hospitals' misassignment would have resulted in discovery of the misassignment of the appellant hospitals. As this opinion was based upon existing data and regulations, knowledge of which would reasonably be imputed to departmental specialists in the area, we think that the Department should be charged with awareness of the problem in 1986. The error was certainly known to the Department in 1987 when one appellant, the

Hospital Center at Orange, brought the erroneous equalization factor to its attention in its 1984 Final Resolution letter, prior to its 1984 Final Reconciliation.

At that time, the Departmental response was to reject the information as an untimely "calculation" error barred by its 15–day rule governing such errors. Although the Department and the Commission may have implicitly now retreated from this "calculation" error argument, we specifically reject it. The record discloses an acknowledgement by a Departmental representative that the mistake in the Department's calculation of the labor equalization factor would have been "very, very difficult if not impossible [for the hospitals] to discover." Besler's uncontested affidavit states that the data used to develop the labor market rates are not provided to hospitals, and that it would not have been merely difficult for hospitals to discover the error in allocation, but that the error could not have been discovered earlier because the necessary information to detect the error was not provided to the hospitals. The 15–day period for notification of calculation errors, *N.J.A.C.* 8:31B–3.51(a), or the 45–day period to notify the Department of a desire to file exceptions, *N.J.A.C.* 8:31B–3.51(b), or even the petition of objection procedural rule, *N.J.A.C.* 8:31B–3.63(c), are not appropriate bars to relief from such an error, not capable of being known to the appellant hospitals.

Under the Department's regulations, even after conclusion of the appeals process permitted following adoption of a preliminary schedule of rates, the rates are not "final" until final reconciliation. *See N.J.A.C.* 8:31B–3.65(b). In addition, as previously noted, *N.J.A.C.* 8:31B–3.17(b) appears to contemplate correction of discrepancies exceeding $50,000 after final reconciliation. Thus, as the appellant hospitals have correctly argued, there is substantial regulatory authority for retroactive correction of errors. Indeed, there have been such corrections in the past.

Simply put, the Department has acknowledged making a serious mistake, but the Commission has determined that the possible difficulties which might be imposed upon those who benefited from the mistake precluded a full retroactive correction. The principal thrust of this position adopted by the Commission has been articulated most concisely by the representative for the 18 hospitals which benefited from the Departmental error:

> Secondly, from our perspective, during those years 1984 through 1988, including 1988, we accepted our rates, or many of us accepted our rates. We put into writing to the Commission and to the Department of Health that we were fully aware of the rates we were being issued. We noted any calculation errors we were aware of. And, therefore, we made decision [sic] to accept, conditionally accept things, to appeal and not to appeal. We had had some of those appeals for those years closed. We have had final reconciliations for those years closed. We have audits upon those years closed. We are now talking about going back and opening up those years and saying well, having accepted your rates really didn't mean anything; having gone before the Commission and having the schedule of rates approved through the appeals process didn't mean anything; having audit adjustments through that process didn't mean anything; having final reconciliation didn't mean anything. Well, unfortunately to us it did mean something. We relied on those rates. We relied on those decisions by this body. And we have made decisions within our organizations. We have spent money we were issued. We have taken loans from banks. We started new programs. We operated our hospitals in complete reliance on the rates that we were issued from the Department of Health and the knowledge that we had relating to those rates.

As previously indicated, the Commission is required to provide revenues sufficient to cover the properly calculated preliminary cost base, *N.J.S.A.* 26:2H–4.1(b), and to group the hospitals in their proper labor market, in accordance with *N.J.A.C.* 8:31b–3.22(d)(3)(xi).

It appears that final reconciliation adjustments have now been made. We question how this duty could properly be fulfilled for any of the hospitals in question for the years, 1984–1986 under *N.J.A.C.* 8:31B–3.73(a) when it was known that the labor cost adjustment factor was inaccurate and thus that it produced inaccurate incentives and disincentives.

The Department of Health and the Commission say it is too "simplistic" to urge that merely because an error which

cost appellants millions of dollars in the aggregate [3] has been identified, it must now be corrected. Rather, conceding the mistake, they say that the question before us is only whether it was an abuse of discretion to decline to reopen decisions made for the years 1984 through 1986, mindful of the impact upon the other hospitals and the payers. It cites an unreported decision, *In the Matter of the Rate Appeal Muhlenberg Regional Medical Center, Inc.*, A–3376–86T7 (App.Div. June 15, 1988), as support for this position. The case is not on point, however, because Muhlenberg Hospital asked for retroactive relief in circumstances arising out of its own mistake. There is a large difference between a standard appropriate for allowing tardy correction of unilateral mistakes by a hospital to its own detriment, and the standard to be imposed where there is a Department-caused mistake which could not have been detected by the affected hospitals.

Mere practical difficulties cannot excuse the necessity to abide by the statutory and regulatory scheme, particularly where demonstrable financial injury has been caused without affording opportunity for correction. We do not see this as an occasion for exercise of discretion, but even if the Commission were free fully to exercise its discretion without regard to the statute and regulations, this would be an arbitrary exercise of that discretion. The Commission may not simply sweep 5½

---

[3]Annual lost revenues for the hospitals in question, based upon 1982 data, unadjusted for 1984, 1985 and 1986 actual figures, is as follows:

| | |
|---|---|
| Alexian Brothers Hospital | $241,582 |
| Clara Maass Medical Center | 431,821 |
| Columbus Hospital | 221,312 |
| East Orange General Hospital | 204,970 |
| Elizabeth General Medical Center | 270,229 |
| The Hospital Center at Orange | 224,542 |
| St. Elizabeth Hospital | 261,586 |

Thus, there is a three-year impact of about 5½ million dollars, without calculating the effect upon the incentive/disincentive program resulting from the corrections.

million dollars of impact under the rug and forget about it because the means of correction are potentially onerous. We have noted that, even though the Commission and Department argue that there would be an opportunity to reapply if egregious harm were to be demonstrated, the final resolution contained in the transcript does not clearly so indicate for 1984–1986. Accepting its availability, we do not view the egregious-harm remedy as adequate for a departmental-caused mistake. It might be an appropriate remedy where a large hospital-caused mistake has been demonstrated at a late date, but that question is not before us.

As we said in *St. Barnabas Med. Ctr. v. New Jersey H.R. S.C.*, 214 *N.J.Super.* 599, 606, 520 *A.*2d 805 (App.Div.1987), "the imposition of an undeserved disincentive—does not advance the aims of the Health Care Facilities Planning Act which is at the heart of the HRSC's operations. It is simply not within the contemplation of the Act to penalize an efficient hospital by applying a disincentive where one is not warranted." This is precisely what the Commission's refusal to correct the mistake for years 1984 through 1986 has done.

We do not regard as persuasive the argument that if retroactive correction is permitted, hospitals which were overpaid will have been deprived of their opportunity to appeal from other aspects of the rate setting process, which might have been appealed if the possibility of further adjustments were known to them. Such determinations always have to be made with the knowledge that the program provides for later adjustments during the final reconciliation process, and even after the common audit.

In light of our resolution of the other issues, it is not necessary to dwell upon Hospitals' argument that the Commission's decision constitutes such a change in policy and deviation from existing rules as to require a formal rule making proceeding. We do not interpret the Commission's opinion as anything other than a conscientious, though erroneous, effort to achieve,

on an *ad hoc* basis, what was perceived as the least worst resolution of a troubling problem. *See Reuters, Ltd. v. F.C.C.*, 781 *F.*2d 946, 950 (D.C.Cir.1986), as to the error of such approach.

Reversed and remanded to the Commission for a hearing and corrective action consistent with the foregoing opinion. We intend that the Commission retain flexibility to devise a fair and appropriate method under the circumstances for bringing the affected hospitals into substantially the same economic position which they would have enjoyed had the correct labor factors been utilized for 1984–1986. We do not foreclose the accomplishment of this end by actual retroactive adjustments, by prospective adjustments staged over a several year period designed toward that end, or by other reasonable means.